E. STUART DICKERSON, JR., ET AL., COMPLAINANTS–RE-SPONDENTS, v. CAMDEN TRUST COMPANY, A CORPORA-TION OF THE STATE OF NEW JERSEY, AND WOODWARD TINGLE DICKERSON, INDIVIDUALLY AND AS EXECU-TORS AND TRUSTEES UNDER THE LAST WILL AND TES-TAMENT OF EDWIN STUART DICKERSON, DECEASED, DEFENDANTS–APPELLANTS.

Argued December 13, 1948—Decided February 28, 1949.

460

*Messrs. Frederick P. Greiner and Grover C. Richman, Jr.,* argued the cause for defendants-appellants Camden Trust Company and Woodward Tingle Dickerson, as executors and trustees (*Messrs. Boyle, Archer and Greiner* and *Mr. Grover C. Richman,* attorneys, *Mr. Walter R. Carroll,* attorney for Camden Trust Company, individually, and *Mr. Douglas Beck Tyler,* attorney for defendants Margaret W. Dickerson, et al.).

*Mr. George W. C. McCarter* argued the cause for defendant-appellant Woodward Tingle Dickerson, individually (*Messrs. McCarter, English and Studer,* attorneys).

*Mr. Albert McCay* argued the cause for plaintiffs-respondents E. Stuart Dickerson, Jr., et al. (*Messrs. Powell and Parker,* attorneys).

*Mr. Saul J. Zucker* argued the cause for plaintiffs-appellants E. Stuart Dickerson, Jr., and Elizabeth E. Dickerson (*Messrs. Kristeller and Zucker,* attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J. The several appeals in this cause stem from a decree of the former Court of Chancery surcharging the defendants Camden Trust Company and Woodward Tingle Dickerson by reason of their administration of the estate of Edwin Stuart Dickerson, deceased.

The decedent died on October 9, 1930, leaving a will executed in August, 1930, in which he designated the Camden Safe Deposit and Trust Company, the predecessor of the Camden Trust Company, and his son, Woodward Tingle Dickerson, executors and trustees of his estate. After making several relatively small bequests and disposing of his residence and household effects, the testator gave the residue of his estate to his executors, in trust, "to invest said estate in legal securities and from the income therefrom arising to pay" certain annuities to his widow and two sons, other relatives and employees, with gifts over, of the principal upon stated contingencies.

Almost immediately after qualifying, the defendant executors and trustees took possession of the assets of the estate, which consisted of realty and personalty valued at $526,430.46 as of the date of death. The great bulk of the personalty, amounting to more than $490,000.00, was composed of bonds, stocks, notes and other investments, purchased by the testator during his lifetime, which were not legal investments for fiduciaries in this State. Although general economic conditions, both preceding and following the commencement of the administration of this estate, where such that the value of securities of the type constituting the assets of the estate was rapidly declining, the executors, notwithstanding the direction contained in the will, retained almost all of the securities without making any attempt to dispose of them. Indeed, upon the conclusion of their administration as executors, the defendants turned over to themselves as trustees the greater part of these securities which, with minor exceptions, they still held at the time the present suit was instituted.

The executors filed their first accounting in December, 1931, and their second and final accounting in June, 1934, in the Camden County Orphans' Court. In the statement of assets annexed to each of the accounts, the executors set forth a complete schedule of the securities held by the estate, listing them, however, at the inventory value at the date of the testator's death. Thus, while the market value of the estate assets had depreciated to approximately $190,000.00 as of the date of filing the final account, it carried them at $330,000.00. Although this appears to have been the practice prevailing in those years, it should be noted in passing that, since the 1941 revision of·the rules of the Prerogative Court and of the Orphans' Court, it has been incumbent upon an accountant to set forth in the statement of assets the true value of the assets of the estate, as well as the inventory value, *Prerogative Court Rule 35; Orphans' Court Rule 27; Rule* 3:95-2. All parties in interest, including the complainants, were duly notified of the filing of both accounts, but no exceptions were taken with respect to the propriety of the retention by the executors of the non-legal investments. The decree allowing the final account charged the executors with the sum of $330,567.20 as being in their hands which, after the payment of commissions and counsel fees totalling $12,000.00, was "to be disposed of according to law."

Upon the allowance of their final account as executors, the defendants turned over to themselves as trustees all of the assets of the estate, accepting them at inventory value instead of the then depreciated market value. On November 21, 1938 they filed their first account as trustees, scheduling and charging themselves with the assets of the estate at inventory value, again as of the date of the testator's death. Prior to the allowance of this account, the present suit was commenced by several of the cestuis, seeking in essence to surcharge the defendant fiduciaries for the losses accruing to the estate as a result of the decline in value of the non-legal investments. The former Court of Chancery thereupon assumed general jurisdiction of the administration of the estate and trusts under the will of the testator and directed the removal to it of the proceedings under

the trustees' first accounting, then pending in the Camden County Orphans' Court.

The final decree advised by the learned Vice Chancellor ordered the immediate sale and conversion of all the non-legal securities remaining in the hands of the trustees and the investment of the proceeds into authorized securities, and surcharged the defendant trustees for the difference between the value at which the non-legal securities had been accepted by them on taking over the assets as trustees and the sum actually received from the sale of said securities, as well as for the consequent loss of income. The decree further provided for the allowance to the trustees of income and corpus commissions, and for the allowance of fees and expenses, payable out of the estate, to counsel for the complainants, counsel for the defendants as fiduciaries and counsel for the defendant beneficiaries. A separate application by the complainants E. Stuart Dickerson, Jr. and Elizabeth E. Dickerson for reimbursement of out-of-pocket expenses allegedly incurred as incident to the preparation for and the prosecution of this litigation was denied.

The defendant fiduciaries appeal from those portions of the decree directing the sale of the non-legal securities and reinvestment of the proceeds, imposing the surcharge, and granting a fee to counsel for complainants. A cross appeal has been taken by the complainants, challenging the allowance out of the estate of costs and fees to counsel for the defendant fiduciaries and to counsel for the defendant beneficiaries. An appeal from the allowance of income and corpus commissions to the trustees has been abandoned. Appeal has also been taken by the complainants E. Stuart Dickerson, Jr. and Elizabeth E. Dickerson from the denial of their application for reimbursement for out-of-pocket expenses.

It is the position of the defendant fiduciaries that, under the terms of the will and the applicable statutes, they were authorized to retain any non-legal investments which were made by the testator and received by them as part of the assets of the estate. Although it is true that under the provisions of the law in force at the time of the testator's death an executor or a

testamentary administrator or trustee was empowered "in the exercise of good faith and reasonable discretion" to continue investments made by his testator, *(P. L.* 1899, *c.* 103, § 1*)* this authority was expressly qualified by the terms of section 3 of that act which stipulated that the act should not apply in cases where the will "specially directs in what manner the trust fund shall be invested," *P. L.* 1899, *c.* 103, § 3. In the face of the plain and explicit direction of the testator here to "invest said estate in legal securities", we can perceive no justification for the retention of these securities by the defendant fiduciaries. It was their absolute duty as executors to dispose of the non-legal investments within a reasonable time after receiving them and to invest the proceeds in securities which were proper investments, *2 Scott, The Law of Trusts,* § 230.

 There is no merit in the suggestion that by reason of the authorization contained in section 1 of the Act of 1899 investments made by a testator became legal securities for a fiduciary to the same extent as those within the statutory list of specific securities. Though the statute made it lawful to retain a testator's investments, it did not thereby constitute such investments legal securities within the usual and normal connotations of that phrase. The commonly accepted meaning of the term relates to the statutory list of designated securities in which a fiduciary is permitted to invest the funds of his estate *(P. L.* 1898, *c.* 234, § 137, *P. L.* 1899, *c.* 103, § 2. as amended and supplemented). Thus a testamentary direction to invest in legal securities constituted an effective prohibition against the retention of non-legal investments made by a testator under the provisions of the Act of 1899.

██ Nor may the continuance of the testator's investments be defended upon the ground that they were retained in the exercise of reasonable care and discretion in good faith. In the absence of any authority to retain the non-legal securities, this test has no application. It is only when the fiduciary is acting within the limits of his powers that that standard becomes pertinent, *Conover v. Guarantee Trust Co.,* 88 *N. J. Eq.* 450 *(Ch.* 1917*),* aff'd 89 *N. J. Eq.* 584 *(E. & A.* 1918*).*

The liability of these defendants as executors for their breach of duty in failing to dispose of the improper investments within a reasonable time, however, is dependent upon the effect to be accorded the orphans' court decrees approving and allowing their two accounts. Each of the accounts as filed had annexed a statement of assets upon which were listed all of the investments held by the estate and the corresponding values of each, which were in fact in most instances the same values set up in the original inventory. In these circumstances, both the executors and the beneficiaries are concluded by the decree of the Orphans' Court approving and allowing the accounts, and the executors' administration of the estate may not be challenged in the present proceedings either with respect to the propriety of the investments or as to the value thereof as stated in the accountings, *Pollack v. Bowman,* 139 *N. J. Eq.* 47 *(E. & A.* 1946).

But as trustees whose power of investment was restricted to legal securities and who had no authority to continue nonlegal investment of the testator, the defendants were under an unqualified duty upon assuming the administration of the trust to accept for the trust estate only cash or legal securities valued at the then market value, *In re Ward,* 121 *N. J. Eq.* 555 *(Prerog.* 1936), aff'd 121 *N. J. Eq.* 606 *(E. & A.* 1937); *Gates v. Plainfield Trust Co.,* 121 *N. J. Eq.* 460 *(Ch.* 1937), aff'd 122 *N. J. Eq.* 366 *(E. & A.* 1937); *Macy v. Mercantile Trust Co.,* 68 *N. J. Eq.* 235 *(Ch.* 1904); *In re Shaw,* 122 *N. J. Eq.* 536 *(Prerog.* 1937). Instead, the trustees took over all of the assets held by themselves as executors, consisting in large part of non-legal investments, accepting them at the original inventory value of the estate. Having accepted the securities at inventory value in breach of their trust, they are charged with and required to account for the assets at the values at which they received them. As stated in 3 *Bogert, Trusts and Trustees,* § 583, *pp.* 15–16:

"* * * The trustee owes a duty to the cestui on taking over property from the executor to examine the property tendered and see whether it is that which he ought to receive. If the executor is under a duty to deliver money to the trustee, and tenders corporate stock

in which the executor has wrongfully invested the funds of the estate, the trustee may render himself liable to the cestui by accepting such a tender, * * *"

This principle would be applicable whether the trustee accepts securities in which the executor has wrongfully invested or whether he accepts securities which the executor has improperly retained. The fiduciary obligation which is breached is the same in each instance—the acceptance of improper assets. And where, as in the present cause, the trustees take over non-legal securities at values in excess of actual worth, they are liable to surcharge for the difference between the values at which the securities were accepted and the amounts realized upon the disposition of such securities. It follows as a necessary consequence that the trustees are liable also for the loss of income to the estate resulting from their breach of trust.

The question of the allowance of counsel fees is a matter resting within the sound discretion of the court below, *Grunstra v. New-Ark Petroleum Corp.*, 111 *N. J. Eq.* 451 *(E. & A.* 1932). A review of the record, however, leads us to the conclusion that the allowance awarded to counsel for the complainants should be reduced from $30,212.00 to $20,212.00. The allowance to counsel for the defendant fiduciaries, which includes the services rendered by them not only in defending this litigation but also in the general administration of the trust estate, and the allowance to counsel for the individual defendants, appear to be reasonable and will not be disturbed.

Except for that part of the allowance to counsel for the defendant fiduciaries which is allocable to the services rendered in the general administration of the estate, however, it is our opinion that none of the allowances granted should be charged to or paid out of the trust estate. While there is no doubt but that the defendant fiduciaries have acted in good faith throughout, still "the necessity for these expenses arose out of the misconception of the trustee as to its duty * * * and through no fault of the cestui," and the beneficiaries should not be required to bear the burden of such expenses, *In re Johnston*, 127 *N. J. Eq.* 576, 586 *(Prerog.* 1940), aff'd 129 *N. J. Eq.*

104 *(E. & A.* 1940*)*. These allowances properly must be borne by the executors and trustees individually.

With respect to the expenses incurred by the complainants E. Stuart Dickerson, Jr. and Elizabeth E. Dickerson, few of them were shown to be incidental to the prosecution of the present litigation, and those few were, as described by the learned Vice Chancellor, a luxury and unnecessary.

The decree of the former Court of Chancery, modified with respect to allowances as set forth above, will be affirmed, and the cause remanded to the Superior Court for the purpose of determining what proportion of the allowance made to counsel for the defendant fiduciaries is allocable to and payable out of the funds of the estate. The order denying reimbursement for out-of-pocket expenses to complainants E. Stuart Dickerson, Jr. and Elizabeth E. Dickerson is affirmed.

No. A–50:

*For modification:* Chief Justice VANDERBILT and Justices CASE, HEHER and ACKERSON—4.

*For reversal:* Justice WACHENFELD—1.

No. A–82:

*For modification:* Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD and ACKERSON—5.

*For affirmance:* None.

No. A–89:

*For modification:* Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD and ACKERSON—5.

*For affirmance:* None.