OLD COLONY TRUST COMPANY, trustee, *vs.* HAUTHAWAY MABBETT & another.

Plymouth. December 7, 1955. — July 9, 1956.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Probate Court,* Accounts. *Trust,* Investments, Trustee's accounts. *Res Judicata.*

The allowance by a Probate Court of accounts of a testamentary trustee, some by decrees before 1938 determining and adjudicating the items in accordance with G. L. (Ter. Ed.) c. 206, § 24, and the others after the amendment of § 24 by St. 1938, c. 154, § 1, barred on the ground of res judicata later inquiry into the propriety of the purchase of certain bonds during the period covered by the accounts, into a loss sustained on a sale of one of the bonds made during that period and reported in one of the accounts, and into the trustee's retention of the other bonds during that period, when they declined in market value substantially although carried in schedule C of the accounts at "book value"; and on subsequent accounts reporting losses on eventual sales of the other bonds the trustee was not chargeable for the losses where it appeared that the amounts obtained in such sales were not less than the market values of the bonds at the end of that period.

PETITIONS filed in the Probate Court for the county of Plymouth for the allowance of accounts.

The cases were heard and reported by *Stone, J.*

*Gerald T. O'Hara,* for the petitioner.

*Alfred R. Shrigley,* (*Hugh Blunt* with him,) for the respondents.

WILLIAMS, J. The petitioner has applied to the Probate Court for the allowance of its tenth, eleventh, twelfth, and

thirteenth accounts as trustee under the residuary clause of the will of Harry I. Mabbett, late of Plymouth, for the benefit of the testator's natural son Hauthaway Mabbett and his adopted son James Ferguson. Objection is made by the guardian ad litem to the allowance of certain items in the twelfth and thirteenth accounts respecting losses incurred on the sale of railroad bonds hereinafter to be described.

The petitioner qualified as trustee on May 6, 1929. In its first account for the period ending May 31, 1930, it reported in schedule C the purchase of the following securities: on January 2, 1930, a $1,000 Chicago & Northwestern Railway Company debenture, 4¾%, Series A, due November 1, 1949, at a price of $1,002.50; on January 18, 1930, $4,000 debentures of the same issue at $4,000; on January 16, 1930, $5,000 St. Louis-San Francisco Railroad Company, 5%, Series B, due July 1, 1950, at $5,097.50; and on January 18, 1930, $5,000 Southern Pacific Company, 4½%, due May 1, 1969, at $4,953.75. In the subsequent annual accounts of the trustee these bonds were reported in schedules C at their "book value," the words "may be less or more than market" being added after the words "book value" in the accounts after the sixth. The first five accounts of the trustee were allowed on June 3, 1935, by decrees stating "that said account be allowed, and the items therein are determined and adjudicated in accordance with § 24 of c. 206 of the General Laws." In the eighth account it appeared that a $1,000 bond of Southern Pacific Company was sold on March 29, 1937, for $914.41 showing a loss of $76.34. The sixth, seventh, eighth, and ninth accounts, covering the period from June 1, 1934, to May 31, 1938, were allowed by decree entered on January 23, 1939, stating that these accounts "having been presented for allowance, and verified by the oath of the accountant, and all persons interested having been duly notified — and the guardian ad litem — having consented thereto in writing, and no objections being made thereto, and the same having been examined and considered by the court. It is decreed that said accounts be allowed." The tenth account was filed on August 15, 1939,

the eleventh on September 21, 1940, the twelfth on September 20, 1941, and the thirteenth on December 16, 1942. In the twelfth account it was reported that on October 21, 1940, the bonds of Chicago & Northwestern Railway Company were sold for $84.99, showing a loss of $4,916.81, and that on the same date the Southern Pacific bonds were sold for $1,604.98, showing a loss of $2,358.02. In the thirteenth account it was reported that the St. Louis-San Francisco bonds were sold on May 7, 1942, for $840.99, showing a loss of $4,244.76. The hearing on these accounts was held on July 9, 1946. In a report of material facts filed on October 14, 1954, the judge found that the purchases of the Southern Pacific and the St. Louis-San Francisco bonds were at the time they were made reasonable and proper. He found that the chairman of the board of directors of the trustee who had part in the discussion as to the securities to be purchased for the trust was at the time the Chicago & Northwestern Railway bonds were purchased a director of the railroad company, that by reason of this relationship the trustee had not exercised the highest degree of care in purchasing the bonds of this railroad, that they were not a proper investment, and that the trustee is chargeable with the entire loss incurred by their purchase and sale amounting to $4,831.82 with interest from October 21, 1940. He ruled that the allowance of the prior accounts barred the guardian ad litem from objecting to the aforesaid purchases except in the case of the Chicago & Northwestern bonds where the court had no knowledge of the dual capacity in which the chairman of the trustee board was acting until this hearing.

He found that the trustee made use of "Moody Bond Ratings" and that when the bonds in question were purchased they were rated according to that publication as A or better. Later they were rated Ba, and he found that in the exercise of ordinary prudence the trustee should have disposed of the bonds within thirty days after they were so rated by Moody. The Southern Pacific bonds were given this rating on April 1, 1933, and thirty days later sold at $580 per thousand. He charged the trustee with a loss of

$715.02 being the difference between $2,320, their market value on May 1, 1933, and the price of $1,604.98 at which they were later sold, with interest. The St. Louis-San Francisco bonds were rated Ba by Moody on May 30, 1931, and thirty days later they sold at $730 per thousand. He charged the trustee with the difference between their market value on June 30, 1931, and the price at which they were sold on May 7, 1942, amounting to $2,810 with interest. The Chicago & Northwestern Railway bonds were rated Ba on November 28, 1931, and their market value thirty days later was $310 per thousand. The judge charged the trustee with the difference between the value on that date and the price of $84.99 at which they were sold on October 21, 1940, terming it an "additional loss" of $1,465.01, with interest. He ruled that the trustee be charged for the entire loss in the account in which the loss was taken although the loss had accumulated over a period of several years, and that the "issues as raised are properly before the court in this account." He found that there was no objection to the allowance of the tenth and eleventh accounts and entered decrees allowing these accounts. He stated that "This court is of the opinion that the question as to its ruling as to the bonds of the Chicago and Northwestern Railroad Company affect the final decree in this case and ought to be determined by the Supreme Judicial Court; therefore, I have reserved my decision and report these facts for the determination of the Supreme Judicial Court in accordance with" G. L. (Ter. Ed.) c. 215, § 13.

The decrees of June 3, 1935, allowing the first five accounts stated that the items therein were determined and adjudicated in accordance with § 24 of c. 206 of the General Laws. As to these accounts it appears that all parties interested were notified of the presentation of these accounts for allowance and that James Ferguson and the guardian of Hauthaway Mabbett assented thereto. The decrees adjudicated the propriety of the investments now at issue and their retention by the trustee during the period covered by the accounts. *North Adams National Bank* v. *Curtiss,* 278

Mass. 471, 481. *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148, 154. The decree allowing accounts 6, 7, 8, and 9 was entered after § 24 had been amended by St. 1938, c. 154, § 1. As amended, § 24 provided that after a final decree had been entered on an account "it shall not be impeached except for fraud or manifest error." Decrees on interim accounts of a trustee entered after the amending statute became effective as final adjudications. *Wilbur* v. *Hallett*, 305 Mass. 554. *Waitt* v. *Harvey*, 312 Mass. 384. *Jose* v. *Lyman*, 316 Mass. 271. *New England Trust Co.* v. *Paine*, 317 Mass. 542. *Reynolds* v. *Remick*, 333 Mass. 1. See *Young* v. *Tudor*, 323 Mass. 508, 513, 515. While unrevoked they are res judicata of the issues (*Reynolds* v. *Remick, supra,* page 9) which in fact were, or might have been, tried. *Hanzes* v. *Flavio*, 234 Mass. 320, 329.

The decrees allowing the accounts 1–9 were conclusive respecting the propriety of the original purchases, of their retention during the period of these accounts, and of the disposal of the Southern Pacific bond. See *New England Trust Co.* v. *Paine*, 317 Mass. 542, 548. The decree on the ninth account amounted to a confirmation of the balances carried down through the preceding accounts. *Waitt* v. *Harvey*, 312 Mass. 384, 397. By charging the trustee with losses which appeared in the items to which objection was made in the twelfth and thirteenth accounts the judge erroneously passed upon matters which previously had been adjudicated. The purchase of the Chicago & Northwestern bonds and the failure to sell those and the other bonds when Moody's rating dropped to Ba did not constitute fraud. There was no manifest error in the accounting. Carrying the securities in schedule C at their book value was in accordance with the usual practice of careful and prudent trustees in the period with which we are dealing. See Loring, A Trustee's Handbook (5th ed.) 80, note 5; Newhall, Settlement of Estates (3d ed.) 919.

The question remains whether the trustee has incurred liability by retaining the bonds after the period ending with the eleventh account. It appears that on May 31, 1940,

when the period covered by that account ended the market price of Chicago & Northwestern bonds was $75 bid and $87.50 asked for the lot of five. These bonds were sold for $84.99. On the same date, May 31, 1940, Southern Pacific bonds were selling at $1,325 for the lot of four which were later sold by the trustee for $1,604.98. On the same date the St. Louis-San Francisco bonds were quoted at $9\frac{1}{4}$ bid and $9\frac{3}{4}$ asked or between $462.50 and $487.50 for the lot and they were later sold by the trustee for $840.99. It is clear that the retention of the bonds after May 31, 1940, resulted in no loss to the trust.

We do not pause to consider the complaint of the respondents that the record on which the case is reported is incomplete. The facts on which this opinion is founded are matters of record and sufficient for our decision.

No question is raised as to the propriety of the decrees allowing the tenth and eleventh accounts and these decrees are affirmed. Decrees are to be entered allowing the twelfth and thirteenth accounts of the trustee as filed in the Probate Court.

*So ordered.*