OLD COLONY TRUST COMPANY *vs.* ROBERT B. BRAVO.

Norfolk.   November 6, 1970. — March 11, 1971.

Present: TAURO, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Trust,* Trustee's accounts, Consent of beneficiary.   *Probate Court,* Accounts.   *Res Judicata.*

The allowance by a Probate Court by a decree in 1934 under G. L. (Ter. Ed.) c. 206, § 24, of an account of the trustee of a residuary testamentary trust showing a payment from available funds of Massachusetts legacy and succession taxes then due upon the death of the life beneficiary of the trust, and showing the funding then of new life trusts with remainders over, but not showing any reserve for taxes on future interests, and the allowance of later accounts by subsequent decrees under § 24, as amended by St. 1938, c. 154, § 1, all of which accounts were assented to by a guardian ad litem for the sole remainderman of one of the new trusts, or by him personally on attaining majority, precluded the remainderman from obtaining a determination of the propriety of an item in an account showing payment of the succession tax due upon the death of the life beneficiary of that new trust out of its principal, notwithstanding a provision of the testator's will for payment of "all" succession taxes "from the residue" of his estate.

PETITION filed in the Probate Court for the county of Norfolk on November 15, 1968, for the allowance of an account.

Upon the filing of objections, the case was reserved and reported by *Fox, J.*

*Remsen M. Kinne, III,* for the Old Colony Trust Company.

*H. Burton Powers* for The Mount Pleasant Home.

*Walter E. Graham* (*Malcolm D. Perkins* with him) for the contestant.

REARDON, J.   This case comes to us on a reservation and report from the Probate Court under G. L. c. 215, § 13. The contestant Robert B. Bravo is the sole remainderman of a testamentary trust for the benefit of Hilton L. Bravo and others created in the will of one Hiram H. Logan.   The contestant has filed objections to the allowance of the fifteenth account of the Old Colony Trust Company (the thirty-fifth of the trust) as trustee.

In question is the payment by the trustee from the prin-

cipal of $27,939.90 to the Commonwealth to cover the Massachusetts inheritance tax on the occasion of the distribution of principal of the trust to Bravo on the death of his father Hilton L. Bravo, the life tenant. The contestant does not deny that the amount was due and owing to the Commonwealth but argues that payment thereof should have been made out of other funds from the Logan estate.

By his will Logan left the residue of his estate in trust for the benefit of his wife for life. His will provided that at her death, after payment of certain specific bequests and dollar legacies, principal of the trust was to be used to establish certain new trusts. The principal remaining was to be paid "free of all trusts, in equal shares to my residuary legatees." Article Two of the will defined these as five charities and institutions in the Boston area, one being the Mount Pleasant Home for Aged Men and Women, which has argued this matter before us. Article Eleven of the will provided, "I direct that all legacy, succession, estate or other inheritance taxes imposed upon or in respect of any of my property shall be paid from the residue of my estate."

Upon the death of the testator's wife Agnes in 1933, three new trusts were established as provided in the will, one being the trust for the benefit of Hilton L. Bravo which is the subject of this proceeding. The eighth account of the Agnes Logan trust, filed in June, 1934, shows distributions of $17,000 frcm principal to each of the five residuary legatees, and a payment of $5,148.59 to the Commonwealth for legacy and succession taxes then due, which payment was made after distribution of the principal of the new trusts and after payment of specific bequests and legacies. The tax payment was made from funds which otherwise would have gone to the residuary legatees. The eighth account likewise showed a balance remaining in the principal account of $12,543.41, and $1,737.79 in the income account, which after payment of various incidental expenses was also finally distributed equally to the residuary legatees, a distribution reflected in the eleventh and final account of the Agnes Logan trust allowed in 1938.

A substitute statement of agreed facts recounts that "[t]he first accounts of the Old Colony Trust Company as trustee under each of the three succeeding trusts were presented to the court with the Eighth Account for the trust for Agnes Logan. A guardian ad litem, Mr. Charles E. Houghton, was appointed to represent the interests of the unborn and unascertained [persons] and minors, including Robert B. Bravo. The guardian assented to the accounts, and all accounts were 'determined and adjudicated' pursuant to" G. L. (Ter. Ed.) c. 206, § 24, in 1934.

In 1936, under the terms of the will, the principal of one of the three successor trusts was distributed to the remaindermen after payment of the tax then due from such principal, all of which was reflected in the fourth and final account of that trust allowed in 1936. No taxes were incurred on the distribution of the principal of a second successor trust in 1943.

The contestant Bravo, who is now fifty-one years old and who has consented to every account with respect to the administration of the trust for the benefit of Hilton L. Bravo from 1938 to 1966, first through a guardian ad litem and, upon his majority, personally, now contends that Article Eleven of the Logan will requires that the taxes presently due on the principal of the trust coming to him be paid out of the original remainder of the residue of the Logan estate. Although no fund was set aside from the Agnes Logan trust for this purpose, it is possible for the trustee to recover from the residuary legatees the amount of any tax for which it might become liable as trustee under indemnity receipts, covering such a circumstance, which it took from each residuary legatee at the time of distribution to them.

The probate judge reserved and reported to us two questions: "1. Was the Massachusetts inheritance tax of $27,939.90 properly paid from the fund held for the ultimate remainderman, Robert B. Bravo? This question raises two subsidiary questions: a. Should the words in Article Eleven of the will of said Hiram H. Logan 'all . . . inheritance taxes imposed upon or in respect of any of my property' be

construed to include taxes on interests falling due after the funding of the trusts under Article Eight, Second? b. Does the direction in Article Eleven to pay such inheritance taxes from 'the residue of my estate' require that the taxes be paid from the entire residue disposed of by Article Eight, or just from the 'remainder of the principal of the trust estate' referred to in Article Eight, Second (8) and given to the testator's 'residuary legatees'? 2. Is the effect of the adjudication or allowance of all previous accounts such as to preclude the contestant from now securing an answer to question 1?"

In our view an affirmative answer to the second question provides the determination of this case. We are quite aware of the importance of the issue and of the far-reaching consequences which will flow from our decision no matter which way it may go. It is apparent that Article Eleven, which was and is in the nature of a standard tax clause, while appropriate for many situations was an inadequate vehicle to employ in the Logan will. The creation of a series of trusts in a will which on its face indicates that the trusts will respectively terminate on different dates calls for a tax clause drafted with more comprehension than was employed in this instance. The Mount Pleasant Home has indicated the dilemma confronting a trustee in successive distribution situations and argued that the course by which the trustee here endeavored to meet its responsibilities was along quite the only avenue it might have followed. We agree. There are two prime reasons for our conclusion. In *Prescott* v. *St. Luke's Hosp. of New Bedford,* 280 Mass. 229, 233, Chief Justice Rugg emphasized that "[e]very will must be construed so far as practicable to be workable and to accomplish a reasonable result." It requires no great stretch of the imagination to envision the result were we to hold on the facts which are before us that the accounts in this estate should be opened, argued and adjudged back to the eighth account of the trust for the benefit of Agnes Logan.

Secondly, it is of importance that all parties agreed to the allowance of all accounts in the intervening three and

a half decades. Certainly the guardian ad litem for Robert Bravo, and Hilton L. Bravo, then living, were in a position in June, 1934, when the account was presented showing payment of inheritance taxes then due from available funds, to discern without difficulty that no reserve was being established for future interest taxes. Indeed, the establishment of such a reserve might well have given rise to various complexities much more difficult to untangle than that which presently confronts the trustee and us. The Bravo trust has increased greatly in size in the intervening thirty-six years, with the tax now payable very much higher than the figure for the future interest tax which might have been calculated in 1933 or 1934, had the issue then been raised. Not only is it entirely impractical but equally inequitable for us to order the reopening of the eighth account, "determined and adjudicated" under G. L. (Ter. Ed.) c. 206, § 24, in 1934, or to open subsequent accounts allowed after 1938, by which time § 24 had been amended by St. 1938, c. 154, § 1.

We thus refrain from passing upon those matters previously adjudicated, where the contestant possessed an interest represented at the time and assented to the allowance of the account through his representative. See *Reynolds* v. *Remick*, 333 Mass. 1, 9; *Old Colony Trust Co.* v. *Mabbett*, 334 Mass. 412; Newhall, Settlement of Estates (4th ed.) § 288. Under G. L. c. 206, § 24, as it reads today, "[a]fter a final decree has been entered on any account hereunder it shall not be impeached except for fraud or manifest error." Neither appears here. *Porotto* v. *Fiduciary Trust Co.* 321 Mass. 638. *Old Colony Trust Co.* v. *Mabbett*, 334 Mass. 412. See *Holyoke Natl. Bank* v. *Wilson*, 350 Mass. 223, 228. We thus answer the second question in the affirmative and, in view of that answer, do not answer the first question put to us by the probate judge.

The matter is remanded to the Probate Court for proceedings consistent with this opinion.

*So ordered.*