SARAH JANE JACKSON & others *vs.* UNITED STATES TRUST
COMPANY, trustee
(and two companion cases [1]).

Middlesex.    January 4, 1972. — March 6, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Trust*, What constitutes, Investments, Trustee's compensation, Trustee's accounts. *Probate Court*, Accounts.

A petition in a Probate Court seeking to compel an accounting for amounts allegedly lost due to the respondent's unauthorized sale of securities, held under an agreement between the respondent and the petitioners' grandfather, was properly dismissed where the judge was justified in finding that the agreement created an inter vivos trust with an implied power to sell the securities in the respondent as trustee, and, even if the agreement only created a pledge, the express terms of the agreement authorized such sales. [336–338]

A Probate Court judge was justified in finding that there was no fraud or manifest error in the allowance of certain commissions and fee to a bank from a fund held by it under an agreement essentially creating an inter vivos trust; it was not improper for the bank to

---

[1] Sarah Jane Jackson & others *vs.* United States Trust Company, trustee; and United States Trust Company, trustee, *vs.* Sarah Jane Jackson & others.

pay half of such commissions and fee to one who had been attorney for the settlor of such trust and members of his family and also was attorney for the bank and who, as trustee under the settlor's will, rendered substantial services to the fund in the circumstances; and there was no conflict of interest on his part in receiving such payments; but it would have been better practice to show the payments to him as testamentary trustee's fees in his accounts as such. [338–339]

A petition in a Probate Court for an accounting of acts done pursuant to an agreement essentially creating an inter vivos trust was properly dismissed where the propriety of such acts could have been tried in connection with certain probate accounts duly allowed after proper notice to all parties in interest and with the assent of a guardian ad litem, and the allowance of the accounts rendered such issues res judicata absent ground for reopening the accounts. [339]

Where probate accounts reflecting certain inheritance tax payments were duly allowed, such payments could not subsequently be attacked as improper. [340–341]

PETITION IN EQUITY for an accounting filed in the Probate Court for the county of Middlesex on September 27, 1966; petition to reopen accounts filed in that court on October 6, 1966; petitions filed in that court on sundry dates for allowance of trustee's accounts of the United States Trust Company.

The cases were heard by *Sullivan, J.*

*Edward D. Hicks* for Sarah Jane Jackson & others.

*William B. Trafford* for Joan Pillsbury Hay & another.

*Avram G. Hammer* (*Richard C. Sheppard* with him) for the appellee.

BRAUCHER, J. These are appeals from decrees of the Probate Court in three related cases which were tried together. In each case the appellants (the grandchildren) are the grandchildren of the late Albert E. Pillsbury (the testator) and the guardian of the children of a deceased grandchild, and the appellee in each case is the United States Trust Company (the Bank). The three cases arose on (1) the grandchildren's petition to compel an accounting by the Bank for a fund deposited with it by the testator under an agreement of October 1, 1919 (the 1919 agreement); (2) their petition to revoke decrees allowing successive accounts of the Bank as trustee under the testa-

tor's will; and (3) the Bank's accounts as trustee for the periods from June 21, 1960, through December 8, 1964. After hearing, the judge made reports of material facts, and decrees were entered dismissing the petitions of the grandchildren and allowing the accounts of the Bank. The evidence is reported.

The following facts are not in dispute. The testator was a member of the bar for many years, and was at one time Attorney General of the Commonwealth. From 1919 to 1930 he was vice-president of the Bank, and in his later years he was vice-chairman of its board of directors. In 1919 he transferred property and securities to the Bank pursuant to the 1919 agreement, which was a separation agreement between him and the Bank and between the Bank and his wife. He was to keep the fund sufficient to yield an annual income of $3,000, and the Bank was to pay the wife $250 a month during her life, to pay "surplus" income to the testator, his executor, administrator, or trustee, until the wife's death, and then, in the contingencies which have occurred, to transfer the fund to a trustee appointed under the testator's will.

The testator died December 31, 1930. His will nominated the Bank and Mr. Frederick Foster as executors and trustees of the securities to be received under the 1919 agreement. One-half of the securities was to be held for the testator's daughter Elizabeth (the Elizabeth trust) and the other half for his son Parker (the Parker trust), and for their respective issue, as separate funds. Mr. Foster was the personal attorney of the testator and his family, and after the death of the testator he acted as counsel for the children Elizabeth and Parker. He also represented the Bank.

In their inventory and accounts up to 1945 for both the Elizabeth trust and the Parker trust, the trustees listed as of "uncertain" or "doubtful" value the fund to be received under the 1919 agreement. The Bank accounted to Mr. Foster during this period, in his capacities as trustee and as counsel for the life tenants, for all of the Bank's activities under the 1919 agreement.

The testator's wife died July 7, 1945, and the Bank on December 15, 1945, transferred to itself and Mr. Foster as testamentary trustees most of the securities held under the 1919 agreement. The amount so received and subsequent receipts in 1946 and 1947 were reflected in accounts of the trustees allowed by decrees of the Probate Court in 1948 and 1950. Mr. Foster resigned as trustee in 1950 and died in 1962. The accounts of the trustees and after 1950 the accounts of the Bank as remaining trustee were allowed by the Probate Court for successive periods ending June 21, 1960.

Parker died in 1950 and Elizabeth died in 1961. On October 1, 1961, the youngest grandchild became twenty-one, and the two testamentary trusts terminated. A petition for instructions by the Bank resulted in a decree as to distribution shares entered in September, 1964, in accordance with a settlement by the parties. The Bank also filed accounts for periods beginning June 21, 1960, including a final account for the Elizabeth trust for the period ending October 15, 1964, and a final account for the Parker trust for the period ending December 8, 1964. The two petitions of the grandchildren followed.

The grandchildren assert that "secret unauthorized sales" in 1932 and 1933 of securities held under the 1919 agreement caused the fund a loss of about $200,000. They also claim that there was impropriety in the Bank's withdrawal of commissions and "secret splitting of commissions with Foster." Hence, they argue, there should now be an accounting of acts done under the 1919 agreement, the decrees allowing the accounts of the testamentary trustees should be revoked, and the Bank should be denied compensation. Alternatively, they assert that the compensation claimed by the Bank is excessive. Finally, they claim that the Bank improperly paid inheritance taxes out of the fund in violation of the tax apportionment clause of the will and codicil. We discuss these contentions separately.

1. *Changes of investments.* The grandchildren assert that the securities held under the 1919 agreement had a

book value of $129,587 in 1919, a book value of $186,058 at the testator's death in 1930, and a market value at the latter time of $382,156, and that at the termination of the trusts in 1961 the fund had grown only to $382,256. They claim that the securities were pledged by the testator to the Bank to secure its contractual obligation to the testator's wife, that there was no trust until the fund was turned over to the testamentary trustees, that the Bank has no power to sell securities, and that its unauthorized sales caused a loss of about $200,000.

The Bank asserts that there was a trust from the beginning, and that it had a power to change investments by virtue of G. L. c. 203, § 19, see *First Natl. Bank* v. *Truesdale Hosp.* 288 Mass. 35, 45, and also by the terms of the agreement. The 1919 agreement refers to the "fund" without using language of either "pledge" or "trust." In subsequent documents the testator referred to the fund as a "trust fund" and to the 1919 agreement as an "Indenture of Trust"; he also referred to the securities "pledged by me." The judge found that the 1919 agreement created an inter vivos trust and that the Bank had an implied power of sale of the securities held under the agreement, and we are unable to say that these findings are plainly wrong.

Moreover, even if the 1919 agreement created a pledge rather than a trust, it explicitly authorized the exchange of property and securities "by withdrawal and substitution as the donor or his executor or trustee and the . . . [Bank] may agree." During his lifetime the testator made numerous withdrawals and substitutions by agreement with the Bank. The Bank and Mr. Foster became his executors and trustees, and the Bank made withdrawals and substitutions, accounting to Mr. Foster for all its doings. We think the changes of investments complied with the quoted language of the 1919 agreement. We may add that the word "secret" seems entirely inappropriate to these changes in view of the facts that the executors' first account disclosed the portfolio at the time the testator died and that the testamentary trustees' twelfth

accounts itemized the securities held at the time his wife died. See *Buckle* v. *Marshall*, 176 Va. 139, 156.

2. *Compensation under the 1919 agreement.* The Bank withdrew from the property held under the 1919 agreement commissions at the annual rate of six per cent on income through 1941 and thereafter at an annual rate of four per cent on income, two-tenths of one per cent on the first $200,000 of principal, and one-tenth of one per cent of the balance of principal. In addition, it withdrew a termination fee in 1945 of $4,666.58, plus a $250 fee for bookkeeping services. Except for the bookkeeping fee, Mr. Foster received one-half of the amounts so withdrawn.

The judge found "that by receiving these payments there was no conflict of interest by him in his role as attorney for the Pillsbury family and the bank and his role as Trustee." A more accurate statement would be that his triple role was entirely obvious and that the conflict of interest which is inherent in a fiduciary's charge for his services is not the kind of conflict which brings into play the stringent rules against profit from self-dealing. Compare *Turnbull* v. *Pomeroy*, 140 Mass. 117, 118–119, with *Jose* v. *Lyman*, 316 Mass. 271, 278–280. There is nothing in the evidence to support the charge that the compensation was "secret." There was evidence that he rendered substantial services and that the fees charged were both standard and reasonable. Compare *Old Colony Trust Co.* v. *Rodd*, 356 Mass. 584, 587–588.

We think a better practice would have been to show the compensation of Mr. Foster as fees received by him as trustee of the testamentary trusts. It would then have appeared in his accounts as an item to be allowed by the court. G. L. c. 206, § 16. But no claim is made that he received additional compensation for the same work in his capacity as trustee. The net amounts received by the trustees were disclosed in their accounts, which were allowed. We cannot say that the judge was plainly wrong in finding that there was no fraud and no manifest error in the allowance of these accounts. See Bogert, Trusts

and Trustees (2d ed.) § 980, p. 412, and fn. 29. Compare *In Re Estate of Lee,* 214 Minn. 448, 459–460; *Katz* v. *Katz,* 104 N. H. 478, 486; *Binder Estate,* 22 D. & C. 2d (Pa.) 688, 691–692.

3. *Accounting under the 1919 agreement.* The judge found that the assets held under the 1919 agreement were listed in the executors' inventory, that the executors' first account was duly allowed after proper notice to all parties in interest, that the accounts filed by the testamentary trustees showed receipts of income under the 1919 agreement and disclosed the interest of each trust in the principal, and that those accounts were allowed after due notice to all parties in interest and with the assent of a guardian ad litem appointed for all minor children. Thus it appears that the claims now asserted with respect to acts done under the 1919 agreement relate to matters all of which were fully open and could have been tried out at the original hearings on the accounts. Nothing new has been discovered since which was not discoverable then. While unrevoked the decrees allowing the accounts are res judicata of the issues which in fact were, or might have been, tried. G. L. c. 206, § 24. *Porotto* v. *Fiduciary Trust Co.* 321 Mass. 638, 643–644. *Old Colony Trust Co.* v. *Mabbett,* 334 Mass. 412, 415–416. There was therefore no error in the dismissal of the petition for an accounting of acts done under the 1919 agreement unless there is ground for reopening the testamentary trustees' accounts.

4. *Reopening the accounts of the testamentary trustees.* Under the governing statute (G. L. c. 206, § 24) the decrees allowing the accounts of the testamentary trustees are not to be impeached "except for fraud or manifest error." What we have said above with respect to changes of investments and compensation under the 1919 agreement disposes of two bases on which fraud and manifest error are claimed. We discuss below the grandchildren's claim with respect to inheritance taxes. In the absence of fraud or manifest error, the judge correctly dismissed the petition to reopen the accounts previously allowed. G. L.

c. 206, § 24. *Porotto* v. *Fiduciary Trust Co., supra.*
*Reynolds* v. *Remick,* 333 Mass. 1, 9–10. *Old Colony*
*Trust Co.* v. *Mabbett, supra. Holyoke Natl. Bank* v. *Wilson,* 350 Mass. 223, 227–228. *Burlingham* v. *Worcester,*
351 Mass. 198, 201–203. *Old Colony Trust Co.* v. *Bravo,*
359 Mass. 34, 38.

5. *Compensation of the Bank.* The contention that the
Bank should be denied compensation by reason of its alleged misconduct is sufficiently answered by the fact that
the judge did not find that there was any misconduct and
by our conclusion that he was not plainly wrong. See
*Rowland* v. *Maddock,* 183 Mass. 360, 364; *Wasserman* v.
*Locatelli,* 343 Mass. 82, 87. The alternative contention
that the compensation claimed by the Bank and its counsel was excessive is negated by explicit findings that the
amounts were reasonable. Again we cannot say that the
judge was plainly wrong.

6. *Inheritance taxes.* Inheritance taxes on assets held
under the 1919 agreement were payable by virtue of the
wife's death in 1945, and inheritance taxes on assets in
the hands of the testamentary trustees were payable by
virtue of Parker's death in 1950 and Elizabeth's death
in 1961. The tax bills were paid out of the assets held by
the Bank under the 1919 agreement and later under the
testamentary trusts. The grandchildren contend that the
taxes should have been paid from the residue of the estate
under the following provision of the codicil to the will:
"All gifts under the will and this codicil are to be paid or
delivered free of any legacy or succession tax so far as
they may be liable thereto."

The judge ruled that this provision did not apply because the assets in question were not the subject of "gifts
under the will and this codicil"; rather, the gifts were
made by an inter vivos trust and power of appointment.
We need not pass on this question, since the matter is concluded by the allowance of accounts reflecting the tax payments occasioned by the wife's death in 1945 and Parker's death in 1950. *Old Colony Trust Co.* v. *Bravo,* 359
Mass. 34, 37–38.

In this case as in that one, "the guardian ad litem" was "in a position . . . , when the account was presented showing payment of inheritance taxes then due from available funds, to discern without difficulty that no reserve was being established for future interest taxes. . . . We thus refrain from passing upon those matters previously adjudicated, where the contestant possessed an interest represented at the time and assented to the allowance of the account through his representative."

*Decrees affirmed.*