417 So.2d 707 (1982)
John R. FRASER, John Walter Fraser, Joan Elizabeth Fraser, Elaine Fraser, and Virgil Bryan Fraser by Joan Fraser, His Mother and Next Friend, Appellants,
v.
SOUTHEAST FIRST BANK OF JACKSONVILLE, a National Banking Corporation, and Margot C. Valcarce, Appellees.
No. 80-1370.
District Court of Appeal of Florida, Fifth District.
July 7, 1982.
Rehearing Denied August 3, 1982.
John F. Corrigan and Courtney Wilder Stanton, of Ulmer, Murchison, Ashby, Taylor & Corrigan, Jacksonville, for appellants.
Delbridge L. Gibbs, of Marks, Gray, Conroy & Gibbs, Jacksonville, for appellee, Southeast First Bank of Jacksonville.
No Appearance for appellee Margot C. Valcarce.
SHARP, Judge.
John R. Fraser and his four children are the present living beneficiaries of a testamentary trust established by Adelene Fraser, John's mother. They are appealing a partial final summary judgment[1] on Count *708 I of their amended complaint denying them any relief against the Southeast First Bank of Jacksonville and Margot C. Valcarce, the former trustees of the trust. The trial court held that the beneficiaries' suit against the trustees for various failings in the administration and management of the trust was barred by principles of res judicata because the trustees had sought and obtained judicial settlement or approval of their accountings, for the periods of time involved in this suit  July 5, 1968 to April 30, 1976.[2] Under the facts and circumstances shown in this record, we conclude the trial court was correct in dismissing Count I of their amended complaint.
The Fraser trust was established in 1965 upon the death of Mrs. Fraser. Its primary assets were all of the stock in Fountain of Youth Properties, Inc., a corporation which owned and operated a tourist attraction by that name in St. Augustine, Florida. Under the terms of the trust, Walter Fraser (John's father) and John were each to receive one-half of the net income of the trust during their lifetimes. One half of the principal could be invaded for Walter's necessary support, care or medical and hospital needs. The trustees could also pay additional sums for John's childrens' support, education and welfare. Upon Walter's death, the net income was to be paid to John or used for his children. On John's death, the trust was to be distributed to his children.
The problems in giving effect to this testamentary plan were, first, resolving a dispute over the ownership of the stock and, second, working out a method of paying income to trust beneficiaries in a situation where the trust itself had no income. The corporation, whose stock was held in trust, was the income producer. These problems were resolved by a judicial compromise which was amended from time to time. Under this arrangement the trustees operated and managed the corporation and paid Walter and John twelve thousand dollars ($12,000) per year (each), calling Walter's share a "pension" and John's share a "salary." After Walter's death in 1972, John's receipts increased somewhat, and trust funds were distributed for his childrens' education and benefit.
The trustees filed six annual accountings covering the fiscal years ending April 30, 1969 through April 30, 1974. These accountings were filed pursuant to section 737.12, Florida Statutes (1973).[3] Notice of these accountings was given to the beneficiaries, including the guardian ad litem for the Fraser children, who were minors. Pursuant to section 737.13 of the Florida Statutes (1973), the notice said the trustees were seeking "approval of all annual accounts then on file not previously approved." Pursuant to section 737.14 of the Florida Statutes (1973) the beneficiaries had to file their objections to the accountings within sixty days of service of the notice. No objections were filed. On January 6, 1975, the court approved the first through sixth annual accountings. Similarly, the seventh annual accounting was filed, notice was given, and court approval was obtained on October 17, 1975.
On January 1, 1976, a new law went into effect as part of the Revision of Florida's *709 Probate Code. The new law, section 737.407, Florida Statutes (1979),[4] dropped the concept of required, court approved annual accountings.[5] To facilitate the transition from the old to the new law, trustees of trusts being administered under the prior law were required to submit a "Final Accounting" for approval by the court within one year from January 1, 1976.[6] In an effort to comply with the transition law, the trustees filed an eighth accounting covering the fiscal year ending April 30, 1976 on July 3, 1977. John filed objections to this accounting, but he withdrew them. After notice to the Fraser beneficiaries, the court approved the accounts on November 10, 1977. The court's order said the accounts were approved and the trust was discharged from its supervision, pursuant to Chapter 737 of the Florida Statutes.
Ultimately, the trustees obtained approval for accounting periods subsequent to those involved in this suit. They resigned and were released from liability from any acts relating to the post-1976 accounts. As stated above, the later accountings are not involved in this suit.
The issue involved in this case is whether the court orders approving the prior annual or periodic accounts filed by the trustees bar or estop the appellants from bringing this suit. The Frasers argue that the old law[7] made a distinction between the conclusive effect of a court order approving a final accounting in contrast with one approving a periodic or annual accounting. The statute covering final accountings said:
Prior to the final distribution of the trust, the trustee shall file a final account in the same form as an annual account, and give notice thereof to all beneficiaries... . If the court finds that the trustee has properly administered the trust, an order shall be entered approving the final account and all unapproved annual accounts and directing distribution; and upon filing of proper receipts showing distribution as directed, an order shall be entered finally discharging the trustee and the sureties on his bond, which order shall be conclusive, subject only to the right of appeal.
§ 737.16, Fla. Stat. (1973). Admittedly a final accounting pursuant to this law did not take place in this case because the trust continued past the repeal date of section 737.16.
The section applicable to periodic or annual accountings provided:
If notice of the filing of an annual account has been given or waived, the court may, after the time for filing objections has expired, or at the hearing on any objections, enter an appropriate order on such account and on all unapproved annual accounts previously filed.
§ 737.15, Fla. Stat. (1973). Although section 737.15, unlike section 737.16, did not expressly state the court order was "conclusive," its notice and service requirements, and the provision of a sixty day time period in which to file an objection,[8] clearly show some binding or conclusive effect was intended.
*710 Because we have been unable to find any Florida case in point, we adopt the view, which the later statute[9] promulgates,[10] that there should be no distinction made between whether or not an accounting is periodic, annual or final for purposes of giving res judicata or a conclusive effect to a court order approving it.[11] In the early decision of Gadsden v. Jones, 1 Fla. 332 (1847) the Florida Supreme Court considered the effect of an executor's final discharge. It held a final discharge by the county court barred a creditor's subsequent suit against him for failure to pay a claim.[12] The court relied on a statute which barred such claims after five years following discharge. It said:
One of the primary rules laid down by the sages of the law for the construction of Statutes is, that "there are three facts to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy,"  that is, how the common law stood at the time of making the act, what the mischief was for which the case did not provide, and the remedy the Parliament hath provided to cure the mischief. (Citation omitted).
Id. at 340-41. The court said the old law was that an executor could never be discharged from his duties and the mischief was he remained, theoretically, forever liable. The evil was that no competent person of substance wished to undertake such an office. And the remedy was to secure a speedy and certain release for executors from their duties.
The mischief and evil sought to be remedied in the trust accounting context is similar to that of probate, except the need for the conclusive effect for periodic accountings is perhaps even greater for trusts because they may continue for much longer periods of time. As the court said in In Re Van Deusen's Will, 24 Misc.2d 611, 196 N.Y.S.2d 737 (Sur.Ct. 1960):
The application of any other Rule [than res judicata], in our judgment, would result in a maelstorm of uncertainty, lack of judicial finality and ultimate chaos. Without some safeguards, no fiduciary could ever rest secure after his supposed acquittance. Hence we cannot conceive the prior accounts, and the decrees settling them, as constituting useless gestures which may be lightly brushed aside at the caprice of interested parties years after persons involved and records required are no longer available to dispute attacks made on them.
Id. 196 N.Y.S.2d at 743.
Most jurisdictions[13] conclude that a judicial settlement of a trustee's accounts, as to persons who receive notice and are subject to the court's jurisdiction,[14] bars subsequent litigation seeking to raise defaults or defects with the matters shown or disclosed in the accountings.[15] It is a modified kind of *711 res judicata, based in part on statute and in part on case law.[16] It is different from the traditional concept of res judicata because, assuming there is due notice to all beneficiaries, courts say the beneficiaries are barred from questioning later matters which are disclosed by the accounting, but not those not disclosed.[17] In traditional res judicata, a party is barred from raising not only issues which were litigated, but those that might have been discovered and litigated.[18] Further, unlike traditional res judicata concepts, the beneficiary may accept the trustee's accountings as complete and truthful.[19] Thus, causes of action against a trustee are not barred by prior judicial orders or settlements for a trustee's malfeasance not shown by the accounts,[20] such as self-dealing,[21] fraud,[22] and bad faith.[23] Also, issues not encompassed by the accounting or discharge, such as the proper construction of a will[24] or the liability of the dower portion of an estate for its share of estate taxes,[25] which was not passed on by the probate court, will not be barred in subsequent suits.
In applying this modified res judicata, it becomes necessary to determine first the nature of the complaint asserted, and second whether or not these matters were disclosed by the prior accountings. The Frasers' amended complaint sets out six grounds of attack on the performance of the appellees as trustees:
1. They failed to pay Walter Fraser the net income of his trust, and failed to pay him funds he needed for his support, medical and health care. John's deposition established that Walter incurred $100,000.00 in medical bills which John paid by selling property in his father's estate.
2. They failed to pay the net income of the trusts to John after Walter's death.
3. They failed to distribute the `statutory' minimum income based on the value of the principal. (No statute in effect for these accounting periods was cited to this court requiring such a distribution).
4. They breached their duties as Trustees by not expeditiously liquidating the corporation, the principal asset of the trust; and in recent years acted against the interests of the beneficiaries by building up extensive retained earnings, thereby creating large potential income tax liabilities when it is dissolved.
5. They failed to dispose of the corporation, and breached their trust duties by retaining an under-productive asset.
6. They failed to properly operate, manage and maintain the physical grounds and properties which belonged to the corporation  the Fountain of Youth attraction.
There is no allegation that notice was not properly given to all of the beneficiaries, or that the trustees in any way acted in bad faith, or that they concealed or failed to disclose any matters of substance.
*712 The trial court must have examined the annual accountings filed for the time periods in question, as have we. They are attached as exhibits to the appellees' motion for summary judgment in support of their answer, which raises the settlements as a bar to this suit. The accountings show in a summary fashion all expenditures, income earned, and income distributions from the trust to the beneficiaries. They also show generally, the corporation's net income, the amount of earned surplus for each year, major corporate expenditures, and amounts paid by way of dividends on the corporate shares held by the trust. In arriving at its decision that the prior accountings sufficiently disclosed the matters sought to be raised in this lawsuit so as to bar them, the lower court's decision comes to us clothed with the presumption of correctness.[26] We cannot say it erred in this regard.[27]
As to the first three items, the accountings clearly show the amounts of income earned by the trust and corporation, and the sums distributed to the beneficiaries. The correctness of the amounts distributed, as well as the fact of their distribution are concluded by the prior accountings.[28] Further, as to item one, we doubt the standing of any of these beneficiaries to assert Walter's right to increased distributions in the past.[29]
As to the last three items complained of, the accountings also appear to us as adequate to show that the corporation was being maintained and operated, rightly or wrongly, as the primary trust asset, and that it was earning the stated net income and retaining the stated earned surplus, whether too much or too little. Whether retention of the trust asset was a breach of the trustee's fiduciary duty appears to us to be barred by the accountings, because retention was fully disclosed.[30]
The trustees' alleged mismanagement of the corporation by letting the physical property of the attraction deteriorate is a closer question. However, there is no suggestion in the record that the beneficiaries were barred from coming upon the property, and in fact they did so. They lived in the same town. Further, there is no suggestion that the trustees hid or concealed any facts or records, corporate or trust related, from the beneficiaries. John retained an accountant to assist him in reviewing the corporate records from time to time. We conclude that these charges of mismanagement are likewise barred by the judicial settlements in this case.[31]
For the reasons stated in this opinion, the lower court's partial final summary judgment is
AFFIRMED.
COBB and COWART, JJ., concur.
NOTES
[1] The lower court left standing Count II of the Frasers' amended complaint which dealt with the liability of the defendants as directors of a corporation, a separate entity from the trust involved in Count I. Count II, as a distinct and severable cause of action, is not involved in this appeal. Mendez v. West Flagler Family Ass'n, Inc., 303 So.2d 1 (Fla. 1974).
[2] In an unrelated appeal these same beneficiaries sought an accounting and similar relief against the trustees for periods of time after April 30, 1976. We noted in that case the major complaints related to earlier periods of time and we said, "We do not suggest that such relief might have been available or appropriate, if it had been sought. The trial court in this litigation considered only what was presented to it for determination." Fraser v. Southeast First Bank of Jacksonville, 395 So.2d 1187 (Fla. 5th DCA 1981).
[3] This section provided:

Every trustee shall file an annual account within ninety days after the expiration of the immediately preceding full calendar year or fiscal year of the administration of the trust... . Each annual or other periodic account shall contain an inventory of the trust fund at the end of the accounting period, .. . whether in cash or other property, and any other information which the trustees may desire to submit. All disbursements and distributions shown upon the account shall be supported by receipts or vouchers showing the purpose therefor whenever the court or any beneficiary shall so request.
[4] This was formerly section 738.151, Florida Statutes (1975).
[5] § 737.201, Fla. Stat. (Supp. 1974).
[6] § 737.407, Fla. Stat. (1979).
[7] We do not rely on the conclusive effect of the new law, section 737.307, Florida Statutes (1979), in this opinion because the accountings in this suit were not, except for the last one, filed while it was in effect. That section of the new law provides:

Unless previously barred by adjudication, consent, or limitations, an action against a trustee for breach of trust is barred for any beneficiary who has received a final, annual, or periodic account or other statement fully disclosing the matter unless a proceeding to assert the claim is commenced within 6 months after receipt of the final, annual, or periodic account or statement. In any event and notwithstanding lack of full disclosure, all claims against a trustee who has issued a final account or statement received by the beneficiary and has informed the beneficiary of the location and availability of the records for his examination are barred as provided in chapter 95.
[8] § 737.14, Fla. Stat. (1973).
[9] § 737.307, Fla. Stat. (1979).
[10] Cf. Beck v. Beck, 383 So.2d 268, 272 (Fla. 3d DCA 1980) ("The Probate Code of 1976 is largely declaratory of the prior decisional law."). This court has previously used a subsequent statute to arrive at the proper statutory construction of a predecessor statute. See Foremost Insurance Co. v. Medders, 399 So.2d 128 (Fla. 5th DCA 1981); Stafford v. State, 380 So.2d 538 (Fla. 5th DCA 1980).
[11] Carten v. Carten, 153 Conn. 603, 219 A.2d 711 (1966); Jackson v. United States Trust Co., 361 Mass. 333, 280 N.E.2d 187 (1972); In Re Swart's Estate, 332 Mich. 404, 51 N.W.2d 903 (1952); Estate of Gray, 9 Mich. App. 262, 156 N.W.2d 594 (Ct.App. 1967); In Re Bailey's Trust, 241 Minn. 143, 62 N.W.2d 829 (1954); Dickerson v. Camden Trust Co., 1 N.J. 459, 64 A.2d 214 (1949); In Re Van Deusen's Will, 24 Misc.2d 611, 196 N.Y.S.2d 737 (Sur.Ct. 1960); 3 A. Scott, Trusts § 220, at 1765 (3rd ed. 1967); Restatement (Second) of Trusts § 220 comment a (1959); G. Bogert, Trusts and Trustees § 974 (2d ed. 1975).
[12] See also Central Farmers' Trust Co. v. Pinkham, 119 Fla. 444, 161 So. 273 (1935).
[13] But see Mims v. Valley Nat'l Bank, 14 Ariz. App. 1980, 481 P.2d 876 (Ct.App. 1971) (decision grounded on the strictly in rem aspects of the Arizona probate statute).
[14] Krivitsky v. Nye, 155 Fla. 45, 19 So.2d 563 (1944); Estate of Sewell, 487 Pa. 379, 409 A.2d 401 (1979).
[15] See In Re Marine Midland Bank-New York, 77 Misc.2d 543, 354 N.Y.S.2d 332 (Sur.Ct. 1974); In Re Van Deusen's Will, 24 Misc.2d 611, 196 N.Y.S.2d 737 (Sur.Ct. 1960); 90 C.J.S. Trusts § 416 (1955).
[16] In Re Swart's Estate, 332 Mich. 404, 51 N.W.2d 903 (1952); Estate of Gray, 9 Mich. App. 262, 156 N.W.2d 594 (Ct.App. 1967); In Re Enger's Will, 225 Minn. 229, 30 N.W.2d 694 (1948); In Re Marine Midland Bank-New York, 77 Misc.2d 543, 354 N.Y.S.2d 332 (Sur.Ct. 1974); G. Bogert, supra note 11.
[17] Restatement (Second) of Trusts, supra note 11.
[18] Youngblood v. Taylor, 89 So.2d 503 (Fla. 1956); Jackson Grain Co. v. Lee, 150 Fla. 232, 7 So.2d 143 (1942).
[19] Nat'l Academy of Sciences v. Cambridge Trust Co., 370 Mass. 303, 346 N.E.2d 879 (1976); In Re Enger's Will, 225 Minn. 229, 30 N.W.2d 694 (1948).
[20] 3 A. Scott, supra note 11, § 220.
[21] In Re Enger's Will, 225 Minn. 229, 30 N.W.2d 694 (1948); In Re Weinberg's Will, 63 N.Y.S.2d 472 (Sur.Ct. 1946).
[22] Nat'l Academy of Sciences v. Cambridge Trust Co., 370 Mass. 303, 346 N.E.2d 879, 880 (Mass. 1976).
[23] Kittel v. Simmonite, 152 So.2d 817 (Fla. 3d DCA 1963).
[24] Hudson v. Lindsay, 13 Mich. App. 671, 164 N.W.2d 731 (Ct.App. 1968), rev'd on other grounds, 383 Mich. 126, 174 N.W.2d 822 (1970).
[25] Dacus v. Blackwell, 90 So.2d 324 (Fla. 1956).
[26] In Re Bailey's Trust, 241 Minn. 143, 62 N.W.2d 829 (1954); In Re Weir's Will, 182 Misc. 845, 46 N.Y.S.2d 551 (Sur.Ct. 1943).
[27] Jackson v. United States Trust Co., 361 Mass. 333, 280 N.E.2d 187 (1972).
[28] Hudson v. Lindsay, 13 Mich. App. 671, 164 N.W.2d 731 (Ct.App. 1968), rev'd on other grounds, 383 Mich. 126, 174 N.W.2d 822 (1970); In Re Swart's Estate, 332 Mich. 404, 51 N.W.2d 903 (1952); In Re Peck's Estate, 323 Mich. 11, 34 N.W.2d 533 (1948); Estate of Gray, 9 Mich. App. 262, 156 N.W.2d 594 (Ct.App. 1967); In Re Bailey's Trust, 241 Minn. 143, 62 N.W.2d 829 (1954); In Re Chapin's Estate, 171 Misc. 783, 14 N.Y.S.2d 91 (Sur.Ct. 1939).
[29] In Re Weir's Will, 182 Misc. 845, 46 N.Y.S.2d 551 (Sur.Ct. 1943).
[30] See Jackson v. United States Trust Co., 361 Mass. 333, 280 N.E.2d 187 (1972); In Re Weinberg's Will, 63 N.Y.S.2d 472 (Sur.Ct. 1946); In Re Weir's Will, 182 Misc. 845, 46 N.Y.S.2d 551 (Sur.Ct. 1943); Dickerson v. Camden Trust Co., 1 N.J. 459, 64 A.2d 214 (1949).
[31] Carten v. Carten, 153 Conn. 603, 219 A.2d 711 (1966); In Re Marine Midland Bank-New York, 77 Misc.2d 543, 354 N.Y.S.2d 332 (Sur. Ct. 1974); In Re Van Deussen's Will, 24 Misc.2d 611, 196 N.Y.S.2d 737 (Sur.Ct. 1960).