MARION B. SESSIONS, *et al.,* v. T. E. WILLARD, as Administrator, etc., and GLOBE INDEMNITY COMPANY.

172 So. 242.
Opinion Filed January 15, 1937.
Rehearing Denied February 12, 1937.

850

*Bedell & Bedell,* for Appellants;

*Daniel & Thompson* and *Austin Miller,* for Appellees.

TERRELL, J.—Alice R. Willard of Jacksonville, Florida, died intestate in November, 1926, leaving as heirs and distributees, one sister and a number of nephews and nieces. In January, 1926, M. H. Haughton was appointed administrator of her estate which consisted of a house and lot on Adams Street, some unimproved lots one of which was under contract of sale, cash in the sum of $716.04, three mortgage notes aggregating $5500.00, and some jewelry. Haughton acted as administrator until April, 1931, during which time he collected the amounts due on the mortgage notes, the amount due on the lot that was under contract of sale and the rent for the use of the house and lot on Adams Street.

From the amounts so collected, he paid the funeral expenses, cost of administration, taxes on the real estate, repair and general upkeep on the Adams Street property and made distribution to the heirs and distributees aggregating $6100. In April, 1931, Haughton filed his application in the probate court of Duval County to be discharged as administrator and as part of such application, he included a statement of his account showing that he had on hand $12.20 in cash and that there was due by him as administrator to the estate, the sum of $2080.74.

His discharge was promptly granted and T. E. Willard was appointed administrator *de bonis non* in his stead. Willard qualified and acted as administrator until November, 1932, when he filed his resignation as such with the probate court but it was not accepted and stands unrevoked

to this date. As a part of his qualification as administrator *de bonis non,* Willard posted a bond in the penal sum of $3000 with Globe Indemnity Company as surety. Both are parties defendant to this suit.

Haughton delivered the jewelry and the $12.20 in cash held by him as administrator to Willard. Willard then instituted an action at law against the surety on Haughton's bond to recover the sum of $2,080.74 shown by his final report to be due the estate. Soon after the action was brought, the surety company (United States Fidelity and Guaranty Company) in full settlement of said claim paid Willard as administrator the sum of $2,059.41. Willard reported this sum to the probate court as assets of the estate and as administrator, for prosecuting and settling the claim, he claimed attorneys' fees and costs which were allowed him by the court.

As administrator, Willard collected rents on the Adams Street property in the sum of $1,050.00 and from these rents and other amounts received as administrator, he made repairs on the Adams Street property, paid taxes on the real estate, fees to the rental agent, paid the premium on his bond as administrator and paid himself for services in managing the estate. He reported the rents collected as assets of the estate and in his reports to the probate judge, claimed payment for repairs, taxes, commissions to rental agent and premium on his bond as administrator of the estate.

The appellant, Sessions, being one of the distributees, objected to the final report of Willard as administrator, but the probate judge audited and stated the account of Willard as revealed by his final report to show a balance chargeable to him of $1,944.63 in favor of the estate. Willard as administrator filed a petition for rehearing on the probate judge's findings and for restatement of the ac-

count, but both were denied and neither the account stated nor the order of the judge were ever appealed from or modified.

Prior to the death of the intestate, M. H. Haughton was guardian of her estate and as such, had possession and control of her real estate. He was authorized to sell the latter subject to confirmation by the court. At the time of her death, he was in possession of her property, collecting rents therefrom and following her death, having been appointed as administrator of her estate, he continued to collect the rents. When Willard was appointed administrator, he collected the rents from the Adams Street property and both administrators reported the said rents as assets of the estate in all their accounts filed with the probate judge and all accounts paid from said funds were paid as administrator without objection on the part of the heirs and distributees.

In July, 1932, the appellant, Sessions, alleging unequal distribution among the distributees, filed a petition in the probate court for supplemental distribution from the assets of the estate to equalize distributions previously made. After hearing and consideration, the court decreed that Willard as administrator forthwith pay and distribute $900.00 to the various heirs, including $450.00 to Sessions. It is alleged that these payments have not been made, though the order remains in force and effect.

It is shown that the plaintiff, Theodore H. Willard, Jr., was born March 17, 1911, and did not attain his majority until March 17, 1932, that the jewelry belonging to the estate has never been sold or distributed, but continues in possession of Willard as administrator, that the debts of the intestate have been paid and the time for filing claims against her estate under the law long since passed, and

that Willard as administrator has failed and refused to distribute the amount found by the probate judge to be due.

This suit was instituted by a portion of the heirs and distributees and after reciting the foregoing facts, the bill prayed that T. E. Willard be required to account for the assets of the estate coming into his hands and that the court determine the distributive shares to which the plaintiffs are entitled, making allowance for inequalities in previous distributions. Globe Indemnity Company was named as a party defendant. Both defendants moved to dismiss the bill on the ground that the funds for which plaintiffs seek accounting were not part of the administrable estate of Alice R. Willard, but were rents from real estate and property of the heirs, that no relief can be obtained therefor except against T. E. Willard in his personal capacity, that the bill does not make T. E. Willard liable personally and that Globe Indemnity Company was not a proper party to the bill. Both motions to dismiss were overruled and answers were filed denying the material allegations of the bill and interposing the same defense as that contained in the motions to dismiss.

A special master was appointed who took testimony and found: (1) That the suit was brought against Willard solely in his representative capacity and that no judgment can be rendered against him personally; (2) of the funds of the estate handled by the administrators, more than the balance charged against Willard was derived from rents from real estate and being so, it will be presumed that the payment of all claims and distributions were made from the proceeds of personal assets of the estate and that the balance sought to be charged against the administrator, Willard, was rents from real estate to which he had no legal right and for which the surety is not liable; and (3) the

order of the probate judge adjudicating Willard's account-
ability for the amount found due the estate is not a final
judgment because (a) notice was not given, (b) the plain-
tiff, Sessions, and the administrator were the only parties
and (c) no order of distribution was made.

Exceptions to the master's report and findings were filed
by the plaintiffs, but on final hearing, the Chancellor over-
ruled the exceptions, confirmed the master's report and dis-
missed the bill of complaint. This appeal is from the final
decree.

It is first contended that the bill of complaint is fatally
defective because it is brought against Willard as adminis-
trator and does not make him a defendant individually and
that consequently, no decree could be rendered against him
other than as administrator.

This contention is without merit. In the first place, that
question was raised and adjudicated on the motion to dis-
miss and the master was without authority to raise and ad-
judicate it here. But if he had been clothed with such
authority, the bill of complaint is ample to withstand the
attack and warrant the relief prayed for. The suit is not
at common law, but is in equity, and the bill prays that T.
E. Willard be required to account for the assets of the
estate in his hands as administrator and that the court de-
cree the payment by defendants to plaintiffs and such other
persons of like interest as may join in this suit. Under the
1931 Chancery Act, it was deemed to have prayed for gen-
eral relief.

The bill correctly described the status of the parties and
recites facts which give complainants a right of action
against the defendants personally or as administrators. In
equity such is the test of its sufficiency. When the amount
due is ascertained by the accounting, a decree may be en-

tered against the administrator, but if he fails to respond to it, the surety on his bond may suffer a judgment to be entered against him as this liability arises only when the administrator fails to pay or produce the goods and assets of the estate. Royal Indemnity Company v. Knott, 101 Fla. 1495, 136 So. 474; Green's Administratrix v. Creighton, 23 How. (U. S.) 90, 16 L. Ed. 419; Irving v. Malton, 27 Ga. 330.

Three other questions are argued, but the only one necessary to be answered is whether Willard was acting as the administrator of the estate of Alice R. Willard when he collected the rents from the real estate and received the amount due on Haughton's bond or was he the mere agent of the heirs and distributees of the intestate. If he was acting in the latter capacity, his bondsman is not liable, but if in the former, it was.

The record shows conclusively that Willard was appointed and qualified as administrator *de bonis non* for the purpose of recovering for the estate the indebtedness admittedly due it by Haughton. Haughton's final account and application for discharge shows the amount to be $2,080.74. There was no other personal property left in the estate except jewelry valued at $250.00 and this would not have required a bond of $3,000.00. The order of the probate judge accepting Haughton's resignation finds that he has certain funds in his hands belonging to the estate and orders that they be paid to Willard as administrator *de bonis non*. Suit was brought by Willard as administrator against the surety on Haughton's bond. The suit was dismissed because the indebtedness was paid in full, Willard accounted for the collection as administrator, and his account was approved.

In addition to these facts, the defendants contend and the chancellor held that much more than the balance charged

against Willard by the audit and judgment of the probate judge was rents from real estate owned by the intestate, which passed to her heirs. From this, the chancellor indulges the presumption that payments of debts, expenses, and other distributions made by the administrators were made from the proceeds of personal assets of the estate rather than from rents. By the same token, it was held that the funds due by Haughton to the estate were rents from real estate and that, consequently, they were due to the heirs individually and were not properly paid as assets of the estate to the administrator *de bonis non*.

All the facts as here detailed contradict such a presumption and we find nothing in the record to support it. In our view, the only reasonable presumption to be drawn from the salient facts would be that Willard held as administrator the proceeds of Haughton's bond and other funds which he acquired lawfully as such and that if he collected rents in some other capacity, he paid them out in the same capacity in which they were collected. The rule is settled that where trust funds are mingled with other funds and disbursements made from the common fund or the common fund is wasted, it will be presumed that the part disbursed or wasted was that of the trustee and not that of his *cestui que* trust. Gliden v. Gutelius, 96 Fla. 834, 119 So. 140.

The law of this State not only requires a successor administrator to receive the funds belonging to the estate in the hands of his predecessors, but requires him to sue for them if not paid. Sections 5568, 5569, and 5560, Revised General Statutes of 1920. It is also settled on good authority that if an executor takes custody of property in his representative capacity, he is afterward estopped to deny that it is property of the estate. 23 C. J. 1158; State, *ex rel.* Lafferty, v. Young, 125 N. C. 296, 34 S. E. 444.

Under the circumstances of this case, the rents collected were assets of the estate and were protected by the bond. They were collected and accounted for by the administrator *de bonis non* in his official capacity. One of the distributees was a minor, the others were scattered in different parts of the country, and all acquiesced in their collection and management by the administrator. This procedure was carried on over a period of years and the condition of the bond was such that it should be construed to protect the rents from real estate. A compensation surety is in no position to invoke the rule of *strictissimi juris* in cases like this. American Surety Company of New York v. Smith, 100 Fla. 1012, 130 So. 440.

There is no reason in law why real estate may not become the assets of an intestate estate and in fact it is often made so. It was treated so in this case for six years. The condition of the bond of course determines the liability of the surety, but the scope of that condition may also be measured by the activity of the principal under it when acquiesced in or approved by the surety. When acted under and approved in the manner done in the instant case, this Court will not go out in search of a ruse to relieve the parties to it.

For the reasons thus stated, the judgment below is reversed.

Reversed.

ELLIS, C. J., and WHITFIELD, BROWN, BUFORD and DAVIS, J. J., concur.

DAVIS, J. (specially concurring).—The bond sued on in this case contained the condition that the principal, Willard, as administrator *de bonis non,* "make or cause to be made, a true and just account of his administration when required, and all the rest and residue of said goods and chattels,

rights and credits which shall be found remaining upon final accounts, the same being first examined and allowed by the County Judge's Court of the County where the administration is granted, and shall deliver and pay to such person or persons, respectively, as the said court, by its order or decree, pursuant to the true intent and meaning of the law, shall appoint and direct."

Willard, as administrator *de bonis non,* was appointed to cover for the estate the indebtedness due it by one Haughton, a prior administrator. Willard, as administrator *de bonis non,* recovered the indebtedness and received and receipted for it in his administrative capacity, whether rightfully or wrongfully so being immaterial.

I think our recent decision in City of Auburndale v. Nunn, 125 Fla. 55, 169 Sou. Rep. 558, is ample authority for the holding in this case that Willard and his surety cannot escape liability for the amount Willard recovered and received from the former adminstrator's surety, nor for other amounts collected by Willard as rents for real estate when he collected same *colore officii,* although without technical authority so to do.

Buford, J., concurs.