478 So.2d 82 (1985)
Katherine L. VAN DUSEN, Michael E. Van Dusen, and G. William Van Dusen, Lawful Heirs of the Estate of William Van Dusen, Deceased, Appellants,
v.
SOUTHEAST FIRST NATIONAL BANK OF MIAMI, Eastern Airlines, Inc., Robert J. Serling, and Doubleday Corporation, D/B/a Dial Press, Appellees.
No. 84-1246.
District Court of Appeal of Florida, Third District.
October 29, 1985.
Rehearing Denied November 26, 1985.
*83 Stern & Kneski and Peter Kneski, Miami, for appellants.
Steel, Hector, Davis, Burns & Middleton and Thomas M. Karr, Mary Kogut-Equels, Miami, Fleming, O'Bryan & Fleming and Robert D. McIntosh and Deborah C. Poore, Fort Lauderdale, for appellees.
Before NESBITT, BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
Plaintiffs Katherine L., Michael E., and G. William Van Dusen [collectively the Van Dusens], the lawful heirs of the estate of William Van Dusen, deceased, brought this action against defendants Southeast First National Bank of Miami [Southeast Bank], Eastern Airlines, Inc. [Eastern], Robert J. Serling, and Doubleday Corporation, d/b/a Dial Press [Doubleday]. The Van Dusens alleged that the defendants infringed a common law copyright in the contents of a manuscript written by the deceased and that Southeast Bank breached a fiduciary duty as personal representative of the estate. The Van Dusens appeal from final summary judgments entered in favor of the defendants. For the reasons which follow, we vacate in part and reverse in part.

BACKGROUND
The late William Van Dusen began gathering information for an aviation history while working at Pan American Airways in 1927; he subsequently went to work for Eastern. On January 1, 1953, Eastern and Van Dusen entered into a retirement agreement which provided that Van Dusen would retire from Eastern in 1961 and, then, for the next ten years, serve as an advisor or consultant to Eastern and receive $7,500 per year. The agreement was amended on September 30, 1966, to provide *84 that September 30, 1966, would be deemed the retirement date and that Van Dusen would be retained "[a]s an independent contractor, and not as an employee, ... until the end of March, 1968 to prepare a history of Eastern Air Lines, Inc., under the general supervision of Mr. Dwight D. Taylor, Vice President of Eastern or any person designated by him." In consideration for Van Dusen's "diligent performance of said historical project," Van Dusen was to be paid a fee of "$1,750 for each month in which he so perform[ed] work on such project up to a maximum of eighteen months." A second amendment to the agreement, dated March 29, 1968, extended the period of Van Dusen's services until the end of March, 1969, under the same terms.
On March 31, 1969, Van Dusen wrote to Robert E. Montgomery of Eastern.[1] Van Dusen explained that, despite a heavy work regime, he had not gotten beyond midpoint on the project, and that neither he nor Floyd D. Hall of Eastern wanted to ask for an extension beyond the March 31 cut-off date. He added that he had consulted a "publisher's counsel" who told him that "we [Van Dusen and Eastern] had a `great' and `important' book in the making and [that] the time involved was not unreasonable for such a job." Van Dusen reported that he had moved out of his office and into quarters in Connecticut and intended to "hole in and finish the job." Van Dusen stated:
I've scaled my budget for outside help (stenographic) to about $500 a month. I would like to keep using an Eastern typewriter and a Uher tape recorder. And, if it seems advisable when I get to that stage, I'd like to use the office Xerox for a set of reading copies.
On April 16, 1969, Montgomery responded to Van Dusen's letter of March 31. Montgomery indicated that Eastern agreed to the continued use of the Eastern typewriter and tape recorder and, in addition, would pay for stenographic help for one year at a cost not to exceed $500 per month and, further, that Taylor or another would continue to generally supervise the work. Montgomery indicated that Eastern's agreement was based on the assumption that "the work product is the property of Eastern" and that, in the event of termination of work, "the portion completed thus far would promptly be turned over to [Eastern]." The letter concluded: "If the above correctly summarizes this matter I would appreciate it if you would sign and return to me one copy of this letter." Van Dusen, apparently, never signed the agreement.
In December, 1971, William R. Howard of Eastern wrote Van Dusen, inquiring as to "the status of the book you [Van Dusen] were doing for Eastern."[2] Van Dusen, then living in Miami, responded that he had finished the working drafts of the first three "books" (The Groping Years  1920's, The Foundling Years 1928-38, and The Formative (Growing) Years 1938-46) and had three more to do. As of March, 1972, Van Dusen remained in possession of the Eastern typewriter and equipment. There is no evidence in the record that would indicate that Eastern paid for any stenographic services after March 31, 1969.
Van Dusen died on March 2, 1976, and, on March 24, 1976, Southeast Bank was appointed personal representative of his estate. Katherine L. Van Dusen, Van Dusen's widow, instructed Southeast Bank to give the manuscript, titled "Only for the Young and Valiant" and subtitled "A Profile of an Airline," to Floyd Hall to see if *85 Eastern was interested in it and, in the event Eastern was not interested in the manuscript, to return it to the family for publication and/or donation to the University of Wyoming's Transportation History Foundation Library.[3]
After receiving her elective share, Katherine executed a "Receipt of Beneficiary and Consent to Discharge" on May 11, 1977, acknowledging the receipt of a complete distribution of the share of estate to which she was entitled and consenting to the discharge of Southeast Bank as personal representative. In the fall of 1978, the Van Dusens retained an attorney to obtain all copies of the manuscript which remained in the possession of Eastern or any other person. All copies were returned by October, 1978. On January 4, 1979, Southeast Bank filed a petition for discharge with an attached plan of distribution. The petition indicated, in accordance with section 733.901(1)(e), Florida Statutes (1977), that interested persons had thirty days in which to file objections to the report of receipts disbursements or the proposed distribution of assets. Southeast Bank sent copies of the petition to each of the Van Dusens. No objections were filed. Michael and G. William acknowledged the receipt of their respective shares of the estate and consented to Southeast Bank's discharge in early March, 1979. After filing a report of distribution which indicated that all assets of the estate had been distributed and claims paid, Southeast Bank was discharged on April 18, 1979.
On January 13, 1983, the Van Dusens filed the instant suit.[4] In their Amended Complaint, the Van Dusens alleged that Southeast Bank delivered the manuscript outside the scope of instructions given by Katherine L. Van Dusen, that Southeast Bank and Eastern failed to return the manuscript, that, as a result, the Van Dusens retained counsel to effectuate its return, that the manuscript was eventually returned on October 13, 1978, but that, with the knowledge and consent of Southeast Bank and without the knowledge and consent of the Van Dusens, Eastern delivered the manuscript or a copy thereof to Serling sometime between August, 1976, and January, 1980, for Serling to use as part of his "original" book, and that, on or about January 1, 1980, Doubleday published Serling's book titled "From the Captain to the Colonel" and subtitled "An Informal History of Eastern Airlines," which embodies and uses substantial portions of the manuscript authored by Van Dusen.
In Count I of the Amended Complaint, the Van Dusens alleged that the defendants infringed the common law copyright in the contents of the manuscript and sought, inter alia, an injunction to prevent the defendants from further infringing the common law copyright of the plaintiffs, an award of damages, and an accounting for profits derived from the alleged infringement. In Count II, the Van Dusens alleged that Southeast Bank had breached its fiduciary duty to the estate and the lawful heirs (1) by not protecting the rights of same by obtaining either a statutory copyright of said manuscript pursuant to title 17, United States Code, or, prior to delivery of the manuscript to Eastern, a contract which would have resulted in the protection of the common law copyright, and (2) by permitting and authorizing the publication of Serling's book. The Van Dusens sought compensatory and punitive damages against Southeast Bank under this count.
The trial court entered final summary judgments as to Serling, Doubleday, and Eastern on the ground that Eastern owned the Van Dusen manuscript under the *86 works-for-hire doctrine.[5] Final summary judgment was entered in favor of Southeast Bank on the grounds that (1) its discharge as personal representative of the estate bars the suit, (2) the applicable statute of limitation bars the action, (3) Southeast Bank owned the common law copyright (defense to Count I only), and (4) Eastern owned the manuscript under the works-for-hire doctrine.

COPYRIGHT CLAIM
We vacate the summary judgments on Count I and remand with directions to dismiss this count based upon our conclusion that the Van Dusens' cause of action for common law copyright infringement has been pre-empted by the Federal Copyright Act of 1976, 17 U.S.C. § 101 et seq. [1976 Act], and that such cause of action is cognizable only in the Federal courts.[6]
Prior to January 1, 1978, the effective date of the 1976 Act, there existed a dual system of copyright protection whereby unpublished works enjoyed copyright protection under state common (or statutory) law while published works enjoyed the protection provided by the prevailing Federal statute.[7]Meltzer v. Zoller, 520 F. Supp. 847, 853 (D.N.J. 1981); 1 M. Nimmer, Nimmer on Copyright, § 2.02 (1985) [hereinafter Nimmer]. The 1976 Act has, for the most part, eliminated this dual form of copyright protection. Childers v. High Society Magazine, Inc., 561 F. Supp. 1374, 1375 (S.D.N.Y. 1983); Meltzer, 520 F. Supp. at 853. Subsection (a) of section 301 provides:
On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State. (Emphasis supplied.)
Exemptions to the exclusivity of the 1976 Act exist. Subsection (b) of section 301 provides in relevant part: "Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to ... (2) any cause of action arising from undertakings commenced before January 1, 1978... ." (Emphasis supplied.) While the use of the word "undertakings" creates an ambiguity, the legislative history indicates that Congress intended to exempt "causes of action arising under State law before the effective date of the statute." H.R.Rep. No. 94-1476, 94th Cong., 2d Sess. 132, reprinted in 1976 U.S. Code Cong. & Ad.News 5659, *87 5747; see Meltzer, 520 F. Supp. at 853-54; Bromhall v. Rorvik, 478 F. Supp. 361, 366 (E.D.Penn. 1979). "Undertakings" refers to the alleged infringing activities, not to the creation of the underlying work.[8]Mention v. Gessell, 714 F.2d 87, 90 (9th Cir.1983); Bromhall, 478 F. Supp. at 366; see also 1 Nimmer § 1.01[B][3] n. 116.
Actions for infringement of Federal statutory copyright fall exclusively within the jurisdiction of the Federal courts. 28 U.S.C. § 1338 (a);[9] 3 Nimmer § 12.01[A] and cases cited in note 2. Thus, whether the trial court had jurisdiction of the Van Dusens' copyright claim depends on whether the relevant infringing activity or activities commenced prior to January 1, 1978, or thereafter. We conclude that publication of Serling's book constituted the relevant infringing activity or the "undertaking" from which the Van Dusens' cause of action arose and that, because such undertaking commenced after January 1, 1978, the trial court lacked subject matter jurisdiction over the copyright count (Count I).
"Common law copyright has been defined as `that right which an author has in his unpublished literary creations  a kind of property right  whose extent is to give him control over the first publication of his work, or to prevent its publication.'" Frederick Chusid & Co. v. Marshall Leeman & Co., 326 F. Supp. 1043, 1064 (S.D.N.Y. 1971) (quoting Estate of Hemingway v. Random House, Inc., 53 Misc.2d 462, 464, 279 N.Y.S.2d 51, 54 (Sup.Ct.), aff'd without opinion, 29 A.D.2d 633, 285 N.Y.2d 568 (1967), aff'd, 23 N.Y.2d 341, 296 N.Y.S.2d 771, 244 N.E.2d 250 (1968)). It is frequently referred to as the right of first publication. Frederick Chusid & Co., 326 F. Supp. at 1064; see, e.g., Samet & Wells, Inc. v. Shalom Toy Co., 429 F. Supp. 895, 903 (E.D.N.Y. 1977), aff'd without opinion, 578 F.2d 1369 (2d Cir.1978). In fact, it has been stated that "the only right [an] author has under the common law copyright is the right of first publication." DeSilva Construction Corp. v. Herrald, 213 F. Supp. 184, 194 (M.D.Fla. 1962) (emphasis supplied); International Tape Manufacturers Ass'n v. Gerstein, 344 F. Supp. 38, 56 (S.D.Fla. 1972) (quoting DeSilva Construction Corp., 213 F. Supp. at 194), vacated on other grounds, 494 F.2d 25 (5th Cir.1974).
In Birnbaum v. United States, 588 F.2d 319 (2d Cir.1978), the court was presented with the question of whether the covertly opening, inspecting, and copying of private mail violates a common law copyright of the correspondents under New York law. The court held:
We do not doubt that the New York courts accept the English doctrine of Gee v. Pritchard, 36 Eng.Rep. 670 (Ch. 1818) that private letters, even if of no literary value, are protected by common law copyright. Woolsey v. Judd, 11 Super. (4 Duer) 379 (N.Y. 1855); see Folsom v. Marsh, 9 Fed.Cas. No. 4,901, p. 342 (C.C.D.Mass. 1841) (per Story, J.). But the common law copyright is, in essence, a right of first publication, 1 Nimmer on Copyright §§ 4.02, 4.03 & 4.07 (1978); Estate of Hemingway v. Random House, 53 Misc.2d 462, 464, 279 N.Y.S.2d 51, 54-55 (Sup.Ct.), aff'd by order, 29 A.D.2d 633, 285 N.Y.S.2d 568 (1st Dept. 1967), aff'd on other grounds, 23 N.Y.2d *88 341, 296 N.Y.S.2d 771, 244 N.E.2d 250 (1968), which of necessity includes the right to suppress any publication by injunction. Hence, although one may enjoin the publication of letters of effectuate their suppression, the damage remedy (defamation aside) would lie only if there were a spoliation of the right to a first publication which actually destroyed the value of the owner's right to seek a statutory copyright. See Szekely v. Eagle Lion Films, 140 F. Supp. 843, 849 (S.D.N.Y. 1956), aff'd, 242 F.2d 266 (2d Cir.), cert. denied, 354 U.S. 922, 77 S.Ct. 1382, 1 L.Ed.2d 1437 (1957)... . [T]he mere copying and limited distribution of the letter did not constitute a distribution to the public that could cause damage to the value of the owner's continuing right to secure a statutory copyright. See Estate of Hemingway, supra, 53 Misc.2d at 464-65, 279 N.Y.S.2d at 55. We would find it strained, in any event, to say that the reading of the plaintiffs' letters by several persons, none of whom circulated them to the world, is a "publication" that destroys the value of the work in question. See 2 Nimmer § 8.23; cf. Universal Copyright Convention, art. VI (Paris 1971) (publication defined as "general distribution"); Berne Convention (Brussels 1948), art. 4(4) (publication involves making works available in "sufficient quantities"); see also Berne Convention (Paris 1971), art. 3(3). Hence, we do not find the tort of infringement of common law copyright applicable in the instant case.
Birnbaum, 588 F.2d 326-27 (footnotes omitted); see also Frederick Chusid & Co., 326 F. Supp. at 1065 (materials protected by common law copyright stolen or secretly copied by defendant's employees while employed by plaintiff were not infringed where such materials were available only to defendant's clients and were not published); Estate of Hemingway, 279 N.Y.S.2d at 55 (limited distribution of galley proofs to several publications for review purposes only could not infringe common law copyrights of plaintiffs in the contents of proofs; short of an attempt to obtain statutory copyright, common law rights may only be infringed by usurpation of right of first publication effecting its destruction). Similarly, in the instant case, any actions on the part of Eastern and Southeast Bank in permitting Serling to have a copy of, or to otherwise view, the Van Dusen manuscript did not give rise to a cause of action for infringement of common law copyright. Damage to the common law copyright could not have occurred until the publication of Serling's book.[10]
The gist of the Van Dusens' copyright claim is that the defendants Serling and Doubleday infringed the literary ideas in the manuscript authored by William Van Dusen by causing the publication of Serling's book, which allegedly embodies and uses substantial portions of said manuscript, and that Eastern and Southeast Bank contributed to this infringement by permitting Serling to have access to the manuscript.[11] The Van Dusens were seeking *89 to vindicate their right of first publication. This right was infringed, if at all, in January, 1980, and, thus, subject matter jurisdiction of the copyright claim lies exclusively in the Federal courts.[12]Cf. Bromhall (plaintiff could not maintain state common law copyright claim that his doctoral thesis was infringed by author and publisher of book where only publication of book, which occurred in January, 1978, could give rise to a copyright infringement claim); Klekas v. EMI Films, Inc., 150 Cal. App.3d 1102, 198 Cal. Rptr. 296 (1984) (where unpublished literary work was allegedly plagiarized by screenplay written in 1976 or 1977, film produced in mid-1977 but distributed in December, 1978, and novel published after February, 1979, trial court correctly concluded it could adjudicate claim as to screenplay, but that claims as to film and novel were pre-empted by the 1976 Act).

BREACH OF FIDUCIARY DUTY CLAIM
We conclude that the trial court erred in granting summary judgment in favor of Southeast Bank on Count II.
The burden of proving the absence of a genuine issue of material fact is upon the moving party. Holl v. Talcott, 191 So.2d 40, 43 (Fla. 1966); Vilardebo v. Keene Corp., 431 So.2d 620, 622 (Fla. 3d DCA), appeal dismissed, 438 So.2d 831 (Fla. 1983). Until this burden is met, the opposing party is under no obligation to show that issues remain to be tried. Holl, 191 So.2d 43-44. Southeast Bank did not meet its burden in this regard.
Southeast Bank contends that its discharge in April, 1979, serves to bar the Van Dusens' breach of fiduciary duty claim. Southeast Bank bases its contention upon section 733.901(5), Florida Statutes (1977), which provides: "The discharge of the personal representative shall release the personal representative of the estate and shall bar any action against the personal representative, as such or individually, and his surety."
Section 733.901(5) does not serve as an absolute bar to suits filed after the discharge of a personal representative. See Karpo v. Deitsch, 196 So.2d 180 (Fla. 3d DCA 1967) (construing section 734.23, Florida Statutes, the predecessor to section 733.901(5)); see also In re Estate of Bateman, 290 So.2d 528, 530 (Fla. 3d DCA 1974) (same).
In Karpo, heirs of the decedent charged the administratrix with concealing from them the true worth of the estate and from the probate court the fact that they were the decedent's heirs-at-law. On appeal, the administratrix argued that the circuit court was without jurisdiction to entertain the action, which had been brought over four years after the administratrix's discharge, because of section 734.23, Florida Statutes, *90 which provided that actions against a personal representative were barred unless commenced within one year of the personal representative's discharge. This court stated:
We find this point not to be well taken, in view of the nature of the charges in the original complaint being fraud, and hold that this would not be a complete bar to the instant action. To do so would permit a fiduciary to benefit from its alleged wrongful acts if it could conceal them for the statutory period.
Karpo, 196 So.2d at 181 (citations omitted). Cf. In re Estate of Bateman (petition to reopen administration of estate, filed five years after executor's discharge, properly held barred by section 734.23 where executor acted neither fraudulently nor dishonestly but only failed to make reasonably diligent efforts to locate legatee).
Fraud has not been considered to be the only exception to the bar raised by a personal representative's discharge. The courts have indicated, albeit in dicta, that probate proceedings may be reopened where strong allegations of overreaching and mistake are made.[13]See Yellen v. Long, 387 So.2d 384 (Fla. 4th DCA 1980) (where lower tribunal found appellants' allegations did not establish fraud, over-reaching, or mistake, petition for revocation of probate filed subsequent to rendition of order discharging personal representative insufficient to invoke inherent power and authority of court and properly dismissed as untimely), rev. denied, 392 So.2d 1381 (Fla.), cert. denied, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 122 (1981); Padgett v. Estate of Padgett, 318 So.2d 484 (Fla. 1st DCA 1975) (petition to set aside order of distribution of estate filed after final discharge of personal representative properly dismissed under section 732.30(1), Florida Statutes, the predecessor to section 733.109(1), Florida Statutes (1983), where no strong factual allegations of fraud, overreaching, or mistake were present); In re Estate of Bateman.[14],[15]
In Frazier v. Southeast First Bank of Jacksonville, 417 So.2d 707 (Fla. 5th DCA 1982), our sister court was presented with an issue analogous to the one raised in the instant case. The beneficiaries of a trust filed suit against the former trustees for various failings in the administration and management of the trust. The trial court ruled that the beneficiaries' suit was barred by principles of res judicata because the trustees had sought and obtained judicial settlement or approval of their accountings for the periods of time involved in the suit. The Frazier court determined that the trust area suffered from a mischief and evil similar to that found in the probate area  that is, trustees, like executors, remained, theoretically, forever liable and, as a result, no competent person wished to undertake such an office  and adopted, as a remedy, a modified res judicata concept. Under this concept, judicial settlement of a trustee's account bars causes of action for defaults or defects with the matters shown or disclosed in the accountings but does not bar causes of action for a trustee's "malfeasance not shown by the accounts, such as self-dealing, fraud, and bad faith." Frazier, 417 So.2d at 711. Applying the modified res judicata concept to the facts of the case, the court found that there was no allegation that notice was not properly given to all the beneficiaries, that the trustees *91 acted in bad faith, or that the trustees concealed or failed to disclose any matters of substance, and, consequently, the trial court's order was upheld.
In the instant case, Southeast Bank argues that the Van Dusens cannot avoid the effect of section 733.901(5) because they consented to Southeast Bank's discharge with full knowledge that Southeast Bank had transferred a copy of the manuscript to Eastern and that Eastern had retained a copy until October, 1978. Southeast Bank completely ignores the Van Dusens' allegations, which were not negated by proof submitted below and which, therefore, must be accepted as true, see, e.g., White v. Pinellas County, 185 So.2d 468, 471 (Fla. 1966); Connell v. Sledge, 306 So.2d 194, 196 (Fla. 1st DCA 1975), cert. dismissed, 336 So.2d 105 (Fla. 1976), that the manuscript prepared by William Van Dusen was delivered, with the knowledge and consent of Southeast Bank but without the knowledge and consent of the Van Dusens, into the possession of Serling by an agent of Eastern for use in Serling's book and Katherine's assertion in her affidavit filed in opposition to Southeast Bank's Motion for Summary Judgment that the Van Dusens did not become aware of this delivery until after Serling's book was published.
Southeast Bank invites us to hold that a personal representative may escape liability after wrongfully giving away an asset of the estate if it procures a discharge before interested persons discover its wrongful acts.[16] We decline this invitation. Such a holding would radically change the nature of the relationship between the personal representative and the estate and the persons interested therein and would give the fact of discharge a significance beyond that to which it is entitled.
We recognize that it is the public policy of this state that the estates of decedents be finally determined with dispatch, see Gadsden v. Jones, 1 Fla. 332, 341 (1847) ("The remedy intended by the Legislature was ... a speedy `release from the duties of Executor or Executrix, Administrator or Administratrix,' after a faithful and honest discharge of the trust." (Emphasis supplied.)). However, this policy must be harmonized with the larger policy that requires the uncompromising fidelity of personal representatives. See generally § 733.609, Fla. Stat. (1983).
We conclude that the legislature intended for a modified res judicata concept to be applicable in probate cases. Under this concept, the price of immunity is disclosure. If the personal representative has not disclosed its disposition of an asset of the estate, it is not entitled to the sanctuary provided by section 733.901(5), at least not where, as here, it is alleged that the asset was intentionally given away to a party who was not entitled thereto.[17],[18]Cf. Connelly v. Florida National Bank of Jacksonville, 120 So.2d 647 (Fla. 2d DCA 1960). Southeast Bank did not disclose in the petition for discharge or otherwise its disposition of the copyright in the contents of the Van Dusen manuscript.
With regard to the statute of limitations defense, the general rule in Florida is that "a statute of limitations begins to run when there has been notice of an invasion of legal rights or a person has been put on notice of his right to a cause of action." Kelley v. School Board of Seminole County, *92 435 So.2d 804, 806 (Fla. 1983); see also Nolen v. Sarasohn, 379 So.2d 161, 162-63 (Fla. 3d DCA 1980). An action for breach of fiduciary duty is founded upon a statutory liability, § 733.609, Fla. Stat. (1983), and is, therefore, governed by a four-year statute of limitations. § 95.11(3)(f), Fla. Stat. (1983).
As stated above, Katherine asserted in her affidavit that the Van Dusens did not become aware of Southeast Bank's breach until after Serling's book was published in January, 1980. (The Van Dusens filed the instant suit in January, 1983.) No proof was presented to negate this averment. Accordingly, the summary judgment entered in favor of Southeast Bank cannot be sustained on this defense. See Vilardebo.
As a last defense, Southeast Bank contends that Eastern owned the common law copyright. We hold that Southeast Bank is estopped from raising this defense. See Sessions v. Willard, 126 Fla. 848, 172 So. 242 (1937) (an executor who takes custody of property in his representative capacity is thereafter estopped to deny that it is property of the estate).
Southeast Bank took custody of the manuscript in its capacity as personal representative of the estate and, at all times, considered it to be an asset of the estate.[19] Eastern made no claim to the manuscript or to the copyright in the contents of the manuscript.[20] Even if such a claim had been made, Southeast Bank had a duty to maintain the right of the estate to the copyright until it had been judicially determined that it did not belong to the estate.[21]See In re Hart's Estate, 51 Cal.2d 819, 337 P.2d 73 (1959) (in bank); In re Sidebotham's Estate, 138 Cal. App.2d 412, 291 P.2d 965 (1956). This duty is part of the general duty of the personal representative under section 733.607, Florida Statutes (1983), to take all steps reasonably necessary for the protection and preservation of the estate. Cf. In re Sidebotham's Estate, 291 P.2d at 968.
A personal representative is held to the standards of a trustee. See Beck v. Beck, 383 So.2d 268 (Fla. 3d DCA 1980); § 733.609, Fla. Stat. (1983). The duty of loyalty owed by trustees is of the highest order. As Justice Cardozo stated in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928):
Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions... . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court. (Citation omitted.)
In light of the Van Dusens' accusation that Southeast Bank betrayed them, Southeast Bank will not be heard to argue that it *93 should escape liability on the fortuity that Eastern is the owner of the copyright.

CONCLUSION
For the foregoing reasons, we vacate the final summary judgments on Count I (the copyright claim) and remand with directions to dismiss this count. As to Count II (the breach of fiduciary duty claim), we reverse the final summary judgment in favor of Southeast Bank and remand for further proceedings.
NOTES
[1] In view of our disposition of this appeal, we need not, and do not, reach the issue of whether the trial court erred in considering this letter, the other letters discussed herein, and certain inter-office memoranda, all of which were attached to Eastern's Motion for Summary Judgment, in granting summary judgments in favor of the defendants on Count I. It was the Van Dusens' contention that Eastern failed to establish that these exhibits satisfy certain criteria set forth in section 90.803(6), Florida Statutes (1983) (the business records exception to the hearsay rule).
[2] The record does not indicate what positions Montgomery, Hall, and Howard held with Eastern.
[3] Eastern contended in its Amended Answer and Affirmative Defenses that "the Van Dusen manuscript was rambling, incomplete, and useless to Eastern, covering Eastern's history only before 1932."
[4] In December, 1980, the Van Dusens had filed an action in the United States District Court for the Southern District of Florida. That action, which was substantially identical to the instant suit, was dismissed for lack of subject matter jurisdiction due to the Van Dusens' failure to register the copyright claim before instituting the action as required by Federal statute, 17 U.S.C. § 411(a).
[5] Under the works-for-hire doctrine, a presumption arises, in the absence of an express contractual reservation to the contrary, that the employer or other person at whose instance and expense the work was produced, and not the employee or other person who created the work, is the owner of the copyright in the work. E.g., May v. Morganelli-Heumann & Assocs., 618 F.2d 1363, 1368 (9th Cir.1980); Brattleboro Publishing Co. v. Winmill Publishing Corp., 369 F.2d 565, 567 (2d Cir.1966).
[6] This issue was raised by Eastern in its Reply to the Plaintiffs' Memorandum of Law in Opposition to Eastern's Motion for Summary Judgment. The trial court did not rely on this ground in granting summary judgments in favor of the defendants on Count I, and the defendants did not raise this issue on appeal. Nevertheless, it is well settled that the defense of lack of subject matter jurisdiction can be raised at any time, even on appeal, and on the court's own initiative. See, e.g., Stel-Den of America, Inc. v. Roof Structures, Inc., 438 So.2d 882 (Fla. 4th DCA 1983), rev. denied, 450 So.2d 488 (Fla. 1984); In re Paton's Estate, 173 So.2d 168 (Fla. 2d DCA 1965); 3 Fla.Jur.2d Appellate Review § 301 (1978); see also Fla.R.Civ.P. 1.140(h)(2).
[7] The power of Congress to legislate in this area is conferred by article I, section 8, of the United States Constitution, which provides that "Congress shall have Power ... [t]o Promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."
[8] There is some authority that the 1976 Act does not pre-empt claims arising after January 1, 1978, if such claims are based on works created before that date, see DC Comics Inc. v. Reel Fantasy, Inc., 696 F.2d 24 (2d Cir.1982) (court assumed 1976 Act is not applicable to works created before act came into force); Orth-O-Vision, Inc. v. Home Box Office, 474 F. Supp. 672 (S.D.N.Y. 1979). Those cases ignore the clear language of section 301(a)  that rights in works "created before or after [January 1, 1978] ... are governed exclusively by [title 17]"  and the relevant legislative history, see Meltzer, 520 F. Supp. at 854, and, as a result, have been rejected, see Strout Realty, Inc. v. Country 22 Real Estate Corp., 493 F. Supp. 997, 1000 (W.D.Mo. 1980); 1 Nimmer § 1.01[B][3] n. 116.
[9] Section 1338(a), title 28, United States Code, provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."
[10] A copyright owner is entitled to recover the actual damages suffered by him as a result of the infringement and any profits gained by the infringer that are attributable to the infringement. 3 Nimmer § 14.01[A]; 18 Am.Jur.2d Copyright and Literary Property § 234 (1985). The primary measure of actual damages is the loss in value of the copyrighted work. 3 Nimmer § 14.02. It is undisputed on this record that Eastern received no profits or any other financial consideration from Serling or Doubleday as a result of Eastern's alleged participation in the infringement. Additionally, the value of the manuscript could not have been diminished merely because Serling was allowed to have access to the manuscript.
[11] A person may be liable as a contributory infringer if, with knowledge of the infringing activity, he induces, causes, or materially contributes to the infringing conduct of another. Schuchart & Assocs. Professional Eng'rs, Inc. v. Solo Serve Corp., 540 F. Supp. 928, 940 (W.D.Texas 1982); F.E.L. Publications, Ltd. v. National Conference of Catholic Bishops, 466 F. Supp. 1034, 1040 (N.D.Ill. 1978). A contributory infringer is held jointly and severally liable with the primary infringer(s) for the plaintiff's total damages and may or may not be similarly liable for the total profits realized by the defendants. See 3 Nimmer § 12.04[C][3] (referring to contributory infringers and vicarious infringers as "related defendants"). The acts of a contributory infringer are tied to the acts of the primary infringer(s). Thus, a contributory infringer may be rendered liable for his acts committed beyond the period of statute of limitations if the acts of the primary infringer(s) are not yet barred by the statute. See 3 Nimmer § 12.04[C][2].
[12] There is no question that the right of first publication is among the rights which comprise a Federal statutory copyright. Section 106, title 17, United States Code, provides:

Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and
(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly. (Emphasis supplied.)
For an excellent discussion of the right of first publication, see Harper & Row, Publishers, Inc. v. Nation Enters., ___ U.S. ___, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).
[13] The instant case does not involve the reopening of an estate, see infra note 15, nor does it involve mere mistake or simple overreaching.
[14] In In re Estate of Killinger, 448 So.2d 1187 (Fla. 2d DCA 1984), the court disapproved of Yellen and Padgett to the extent that those cases suggest that mistake constitutes a sufficient ground for reopening an estate.
[15] Section 733.903, Florida Statutes (1983), which provides for the reopening of estates, is not applicable in this case because there is nothing further to administer. See In re Estate of Bateman (construing section 734.26, Florida Statutes, the predecessor to section 733.903, Florida Statutes (1983)). The fact that the probate court order of discharge of personal representative remains in effect does not prevent the Van Dusens from maintaining this action against Southeast Bank in its individual capacity. See Kittel v. Simmonite, 152 So.2d 817 (Fla. 3d DCA 1963), cert. dismissed, 159 So.2d 645 (Fla. 1964).
[16] While we may harbor strong doubt as to the Van Dusens' ability to support their allegations with competent evidence, it is not the plaintiff's burden to prove his cause upon a defendant's motion for summary judgment. See White; Vilardebo.
[17] A fiduciary, such as Southeast Bank, has a duty to make full and fair disclosure, and a breach of that duty, even in the absence of an affirmative misrepresentation, constitutes fraudulent concealment. See generally 27 Fla.Jur.2d Fraud and Deceit §§ 14, 39 (1981). If, upon remand, the Van Dusens prove their allegations and averments, they will, by necessity, establish that Southeast Bank committed a fraud.
[18] With regard to the portion of the claim which alleges that Southeast Bank breached its fiduciary duty by not obtaining a statutory copyright or a contract that would have resulted in the protection of the common law copyright, we conclude that such portion is barred by section 733.901(5). Cf. In re Estate of Bateman.
[19] While a copyright is an incorporeal right which exists independent of and disconnected from any corporeal property out of which it arises, see 18 C.J.S. Copyright and Literary Property § 19 (1939), under the facts of this case, evidence of the parties' treatment of the manuscript is relevant to show their intentions as to the copyright.
[20] In his letter to the trust department of Southeast Bank, dated September 25, 1978, counsel for the Van Dusens stated:

It is our understanding that the bank, in its capacity as Personal Representative of the estate, delivered copies of the text to representatives of Eastern Air Lines, and possibly to others. My clients request that you obtain a return of these drafts or copies immediately unless the present persons possessing such drafts can establish a proprietary interest. (Emphasis supplied.)
[21] Section 733.607, Florida Statutes (1983), provides that a personal representative may bring an action to determine title to property.