Mr. Donald L. Bell General Counsel Department of State The Capitol Tallahassee, Florida 32399-0250
Dear Mr. Bell:
You ask substantially the following questions:
1. Are architectural and engineering plans under seal pursuant to section 481.221 or section 471.025, Florida Statutes, that are held by a public agency in connection with the transaction of official business, subject to inspection and copying under section119.07(1), Florida Statutes?
2. What are the responsibilities of a custodian of public records, who pursuant to law, receives documents that may be copyrighted under federal law?
In sum:
1. Architectural and engineering plans under seal pursuant to section 481.221 or section 471.025, Florida Statutes, that are held by a public agency in connection with the transaction of official business are subject to inspection and copying under section 119.07(1), Florida Statutes.
2. Custodians of public records should advise those seeking to make copies of public records that may be copyrighted of the penalties of violating the federal law.
Question One
Florida's Public Records Law, Chapter 119, Florida Statutes, requires that records which are made or received in connection with the transaction of official business by any "agency" must be open for inspection in the absence of a statute exempting such records or making the records confidential.[1] You ask whether the placing of a seal on architectural plans or engineering plans in accordance with the provisions of Chapter 481 or 471, Florida Statutes, removes such plan from the disclosure requirements of the Public Records Law.
Chapter 471, Florida Statutes, regulating the practice of engineering, was enacted in the interest of public health and safety.[2] Section 471.003(1), Florida Statutes, prohibits any person other than a duly registered engineer from practicing engineering or using "the name or title of `registered engineer' or any other title, designation, words, letters, abbreviations, or device tending to indicate that such person holds an active registration as an engineer in this state." Section 471.025(1), Florida Statutes, requires that all final drawings, specifications, plans, reports, or documents prepared by a licensed engineer to be filed for public record must be signed by an engineer, dated, and stamped with the required seal: "Such signature, date, and seal shall be evidence of the authenticity of that to which they are affixed."
The Legislature has similarly determined it to be in the public interest to regulate the practice of architecture, stating in section 481.201, Florida Statutes:
"The Legislature finds that the practice of architecture is a learned profession. The primary legislative purpose for enacting this part is to ensure that every architect practicing in this state meets minimum requirements for safe practice. It is the legislative intent that architects who fall below minimum competency or who otherwise present a danger to the public shall be prohibited from practicing in this state."
Section 481.223(1), Florida Statutes, prohibits a person from practicing architecture unless the person is an architect or registered architect and from using the name or title "architect" or "registered architect," or words to that effect, if the person is not licensed under Chapter 481, Florida Statutes. Like section471.025, Florida Statutes, for engineers, section 481.221(1)(a), Florida Statutes, provides:
"Each registered architect shall obtain an impression-type metal seal, and all final construction documents and instruments of service which include drawings, plans, specifications, or reports prepared or issued by the registered architect and being filed for public record shall bear the signature and seal of the registered architect who prepared or approved the document and the date on which they were sealed. The signature, date, and seal shall be evidence of the authenticity of that to which they are affixed." (e.s.)
The requirement of sealing in section 471.025(1), Florida Statutes, for engineers and in section 481.221(1)(a), Florida Statutes, for architects thus appears to relate the state's regulation of these professions and an intent to ensure the authenticity of these documents. Thus, the seals establish the identity and professional status of the person producing the plan rather than creating a property interest.
I am not aware of, nor have you brought to this office's attention, any Florida judicial decision recognizing that the sealing of such documents by engineers and architects creates a protected property interest similar to copyrighting under federal law. In fact, the federal copyright act has to a large extent preempted the state's authority to create a copyright property interest.[3] Section 301(a) of Title 17, United States Code, provides:
"On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."[4]
Accordingly, I am of the opinion that the placement of an architect's or engineer's seal on architectural and engineering plans under seal pursuant to section 481.221 or section 471.025, Florida Statutes, respectively, does not remove such plans from public inspection and copying under section 119.07(1), Florida Statutes, when they are held by a public agency in connection with the transaction of official business.
Question Two
The federal copyright law vests in the owner of a copyright, subject to certain limitations, the exclusive right to do or to authorize, among other things, the reproduction of the copyrighted work in copies and the distribution of the copyrighted work to the public by sale or other transfer of ownership.[5] The unauthorized reproduction of copyrighted work constitutes an infringement of such copyright. Copyright infringement is a tort and all persons involved are jointly and severally liable as joint tortfeasors.[6]
Where a federal statute such as the copyright law expressly preempts a field and operates to bar specified acts or conduct, the Supremacy Clause of the United States Constitution provides that the federal law will prevail and exclusively control such matters.[7] Consequently, the state is prohibited from enacting or enforcing any state law or regulation which conflicts or interferes with, curtails, or impairs, the operation of the federal law.
However, even if a record is copyrighted, federal law permits copying under certain conditions. For example, notwithstanding the exclusive rights of the copyright owner, "the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."[8] Moreover, even though federal law provides that a state is not immune from suit for copyright infringement,[9] the United States Supreme Court in Seminole Tribe of Florida v. Florida,[10] concluded that Congress lacks authority in exercising its Article I powers to abrogate a state's sovereign immunity under Eleventh Amendment, stating:
"[I]t has not been widely thought that the federal antitrust, bankruptcy, or copyright statutes abrogated the States' sovereign immunity. This Court never has awarded relief against a State under any of those statutory schemes. . . . Although the copyright and bankruptcy laws have existed practically since our nation's inception, and the antitrust laws have been in force for over a century, there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States."
In addition, the fact that the material may be copyrighted does not preclude the material from constituting a public record. For example, this office concluded in Attorney General Opinion 90-102 that copyrighted data processing software which was not specifically designed or created for the county but was being used by the county in its official capacity for official county business fell within the definition of "public records" as being received by the county in connection with the transaction of official business by the county.
In State, Department of Health and Rehabilitative Services v. Southpointe Pharmacy,[11] the court rejected the argument of the Department of Health and Rehabilitative Services that a transcript of a hearing that had been copyrighted by the court reporter and filed with the department should not be copied without the copyright holder's permission. The court stated that the department with whom the transcript was filed was under a statutory obligation to "preserve all testimony in the proceeding, and, on the request of any party, . . . make a full or partial transcript available."
Similarly, public agencies are required under the Public Records Law to preserve those documents filed pursuant to law with such agencies and to release such documents for inspection and copying.
In light of the above and until this issue is clarified, I am of the opinion that records custodians may release for inspection and copying architectural and engineering plans that must be filed with the agency pursuant to law. Such custodians, however, should advise individuals seeking to copy such records of the limitations of the federal copyright law and the consequences of violating its provisions.[12]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, s. 119.07, Fla. Stat. And see, s. 119.011(1), Fla. Stat. (1996 Supp.), defining "Public records"; and Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc.,379 So.2d 633 (Fla. 1980).
[2] Section 471.001, Fla. Stat.
[3] See, Van Dusen v. Southeast First National Bank of Miami,478 So.2d 82 (Fla. 3d DCA 1985), stating that prior to the effective date of the 1976 Federal Copyright Act, there existed a dual system of copyright protection whereby unpublished works enjoyed copyright protection under state common (or statutory) law while published works enjoyed the protection provided by the prevailing federal statute. The 1976 federal act, however, has, for the most part, eliminated this dual form of copyright protection although exemptions to the exclusivity of the federal act exist.
[4] Cf., 28 U.S.C. s. 1338(a) (the district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases).
[5] See, 17 U.S.C. s. 106.
[6] See, 17 U.S.C. s. 501(a) and (b) (anyone who violates any of the exclusive rights of the copyright owner is an infringer and the owner of the exclusive right under a copyright is entitled to institute an action for infringement). See also, Burwood Products Company v. Marsel Mirror and Glass Products, Inc., 468 F. Supp. 1215
(N.D.Ill. 1979) (Copyright infringement is properly classified as a tort). And see, Gershwin Publishing Corporation v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971) (test for contributory infringement is whether "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another"); Casella v. Morris, 820 F.2d 362, 365 (11th Cir. 1987); Sony Corporation of America v. Universal City Studios, Inc.,464 U.S. 417, 437; 104 S.Ct. 774, 786 (1984) (contributory infringer is one who "was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner"); Screen Gems- Columbia Music, Inc. v. Mark-Fi Records, Inc., 256 F. Supp. 399 (S.D.N.Y. 1966) (standard of knowledge is objective: Know, or have reason to know).
[7] See, Art. VI, cl. 2, U.S. Const. And see, 17 U.S.C. s. 301.
[8] See, 17 U.S.C. s. 107, which states that in determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include:
"(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2) the nature of the copyrighted work;
(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work."
[9] 17 U.S.C. s. 511(a). And see, 17 U.S.C. s. 511(b), providing:
"In a suit described in subsection (a) for a violation described in that subsection, remedies (including remedies both at law and in equity) are available for the violation to the same extent as such remedies are available for such a violation in a suit against any public or private entity other than a State, instrumentality of a State, or officer or employee of a State acting in his or her official capacity. Such remedies include impounding and disposition of infringing articles under section 503, actual damages and profits and statutory damages under section 504, costs and attorney's fees under section 505, and the remedies provided in section 510."
[10] — U.S. ___, 116 S.Ct. 1114, 1185 fn. 16 (1996). In response to Justice Stevens dissent that the opinion results in no remedy for state violations of those federal statutes, the Court noted that an individual may obtain injunctive relief under Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), in order to remedy a state officer's ongoing violation of federal law.
The Eleventh Amendment bars suits not only against the state itself, but also against a subdivision of the state if the state remains "the real, substantial party in interest." Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662
(1974). Whether a particular official is the legal equivalent of the state for Eleventh Amendment purposes is generally a question of that state's law. See, Garcia v. City of Chicago, Ill.,24 F.3d 966, (7th Cir. 1994), certiorari denied, 115 S.Ct. 1313,131 L.Ed.2d 194 (1995).
[11] 636 So.2d 1377, 1182-1183 (Fla. 1st DCA 1994). Compare, Building Officials Code Adm. v. Code Technology, Inc.,628 F.2d 730 (1st Cir. 1980) (federal copyright act did not protect copyrighted model building code developed and published by private organization, which also published edition of state building code based substantially on the model code, against loss of its copyright protection through adoption of the model code as state law since such action triggered application of doctrine that copyrighted material to the extent embodied in the state regulation, lost its copyright protection and became part of the public domain), with Del Madera Properties v. Rhodes and Gardner, Inc., 637 F. Supp. 262 (N.D.Cal. 1985) ("governmental enactment" argument is unpersuasive as there is no basis for a holding that the tentative map is an administrative ruling, legislative enactment, or similar official document and unlike the building code at issue in Code Technology, the map is not a self-executing ordinance but was merely approved and was not transformed by this action into law).
[12] Cf., 17 U.S.C. s. 108(f)(1), stating that nothing in the section "shall be construed to impose liability for copyright infringement upon a library or archives or its employees for the unsupervised use of reproducing equipment located on its premises: Provided, That such equipment displays a notice that the making of a copy may be subject to the copyright law[.]"